# CHARLESTON.

HINKSON v. ERVIN.

| 40 | 111 |
|----|-----|
| 41 | 636 |
| 40 | 111 |
| 46 | 733 |
| 40 | 111 |
| 64 | 385 |

Submitted June 7, 1894—Decided December 15, 1894.

1. PARTNERSHIP—EVIDENCE.
    Stronger evidence of the existence of a partnership is required between partners than by third persons.

2. PARTNERSHIP—BURDEN OF PROOF.
    Under a bill for settlement of partnership account, the burden of proof is on the plaintiff; and if he can not furnish sufficient evidence to establish a partnership, and also to enable the commissioner to state a partnership account, his suit necessarily fails.

3. ACCOUNTING.
    A court will not undertake to adjust the rights of parties with-

out satisfactory means of ascertaining what their rights are, and when an account can not be safely stated, and the true balance between the parties ascertained.

4. DEPOSITION.

· A deposition of a party read on the hearing in the Circuit Court can not be ignored or suppressed from the hearing of an appeal in this Court on the ground that since the decision in the Circuit Court the adverse party has died.

J. B. SOMMERVILLE for appellant, cited 19 W. Va. 274; 24 W. Va. 595.

J. O. PALMER for appellant, cited 20 W. Va. 244; Bates on partnership, Sections 1, 18, 26, 27, 38, 947; 17 Gratt. 321; 50 Iowa 325; 4 Gill. 383; 30 N. J. Eq. 254.

H. C. HERVEY for appellee, cited 3 Tenn. Ch. 223; 17 Ore. 441—21 Pac. R. 556; 1 So. R. 527; 18 Fla. 131; 81 Va. 432; 3 Del. Ch. 307; I Mackey (D. C.) 21; 48 Md. 223; 30 N. J. Eq. 187; 55 Iowa, 11.

W. P. HUBBARD for appellee, cited 24 W. Va. 414; 5 Harr. 115; 1 Green. on Ev. 564; 12 Leigh 617; 17 Gratt. 321, 335; 30 N.J.Eq. 187; 6 Otto 611; 2 Sto. Eq. Jur. § 1520; Amb. 645; 1 Pom. Eq. Jur. § 418; 23 W. Va. 108; 2 H. & M. 603; 34 W. Va. 217; 10 Cent. Rep. 193, 199; 18 W. Va. 693, 747-52; Code c. 130, s. 23.

BRANNON, PRESIDENT:

This was a suit in equity in the Circuit Court of Brooke county by W. T. Hinkson against John Ervin to settle a partnership for dealing in grain, live stock, and other farm products, Hinkson claiming a liability in his favor against Ervin. The Circuit Court entered a decree that the equities were with the defendant, and dismissing the bill, and Hinkson appeals.

Ervin flatly denies the existence of a partnership, and this issue meets us at the front door of the case.

The burden is on him asserting the partnership to prove it, and to prove a partnership the evidence must be stronger between partners than when third persons assert it. *Robinson v. Green,* 5 Har. (Del.) 115.

There are some circumstances indicating a partnership, but they indicate only; they do not prove it. If taken alone, they would be inconclusive, and leave the question in such obscurity that I doubt whether a court could find a partnership upon them; but there are numerous circumstances of a more conclusive nature going to repel any claim of the existence of a partnership. The record from which the facts are to be gleaned is voluminous and complicated, and the evidence long and the circumstances numberless. It would be simply worse than useless to detail the evidence of facts here, since the question whether there was a partnership is purely one of fact, and the evidence and facts bearing on its solution would be applicable only in this case, and be no precedent for other cases. In opinions for publication in the Reports, details of evidence and facts, except so far as is necessary to render intelligible points of law adjudicated, are out of place. If we give facts on one side, we should give those on the other, and the Reports are cumbered with page after page of mere circumstances and facts which, after all, can perform no legal function. Opinions should give points of law and legal principles adjudicated, not endless details of evidence or even facts.

We think the evidence, as a whole, does not establish the partnership. Common rules of evidence require one seeking to recover of another to establish the elements essential to his recovery by full proof. Starkie, Ev. 586, 817-18.

Moreover, even if we could say that a partnership did exist, the plaintiff would encounter another insurmountable obstacle. A perusal of the large record will show that the means to accomplish a statement are utterly inadequate. No books of three years of quite an extensive business, covering many thousands of dollars, were kept. Little memorandum books are somewhat mutilated; some papers lost; papers claimed to bear upon the matters uncertain and incomplete. A court, to accomplish a settlement, would have to wend its way through a maze of circumstances and papers so complicated, so inconclusive and uncertain, as instruments of evidence, that any conclusion as to amount or process of adjustment would be veiled in uncertainty, leaving the mind

uncertain that it was attaining justice. If there was a partnership, the case is a remarkable one for the absence of books and papers and other means of adjustment. A court must have some safe data to guide its steps. If through negligence, bad business conduct, loss of papers, or other cause, such data are wanting, a court simply can not act. If, as I think is the case, the business done which is claimed to have been partnership was the sole business of Hinkson, or his wife by him as 'agent, we can account somewhat for absence of books and memorials and transactions; but it is incomprehensible that a partnership so important could have existed without papers, books, inventories, and other means of tracing its progress, ascertaining its loss or gain, or stating an account of it; and this is a powerful circumstance to repel the idea of a partnership. To make a partnership account, there must first be a general account of the partnership dealings to ascertain the profit or loss, and then separate accounts between the partners and firm. The individual account is impossible until the general account is made, as we can not tell whether a profit or loss is to be shared until we know whether there is a profit or loss. The commissioner's report in this case, finding a balance against Ervin, ignored this principle in stating no general account, to say nothing of other defects; and, in fact, this is not surprising, as I do not see how either this general account or one between the partners could be made upon any basis better than guesswork. The commissioner says the means before him were insufficient to make a statement satisfactory to himself. He says the evidence as to terms of partnership and as to profit and losses is exceedingly meager and unsatisfactory. Certain legal principles here apply. Under a bill for partnership accounts, the burden of proof is on the complainant, and, if he can not furnish sufficient evidence to enable a master to state a partnership account, his suit necessarily fails. *Maupin* v. *Daniel*, 3 Coop. 223. "Where there are issues as to the existence of a partnership and the state of its affairs and business, or the state of the accounts between the partners, the burden is on the plaintiff; and, if he can not furnish sufficient evidence to enable the court to state

a partnership account, his suit necessarily fails." *Ashley* v. *Williams*, 17 Or. 441, (21 Pac. 556.) Same effect, *Nims* v. *Nims* (Fla.) 1 South. 527; *Marvin* v. *Hampton*, 18 Fla. 131. In *Davidson* v. *Wilson*, 3 Del. Ch. 307, the court refused to state a partnership account because on the testimony it was impossible to state an account, and said that the court would "never undertake to adjust the rights of parties without satisfatory means of ascertaining what their rights are, and when an account can not be safely stated, and the true balance between the parties ascertained." The Maryland court said: "A court of equity will not grope its way in utter darkness, and undertake to create and establish a claim upon mere contingencies, or the preponderance of mere possibilities or probabilities, and there is no duty devolving on it to assume the impracticable task of adjusting the rights of the partners, when the proof is utterly deficient and inconclusive." *Hall* v. *Clagett*, 48 Md. 234. And, if any hardship fall on Hinkson, he is to blame for it. He was the active party in the business, transacting, I may say, the whole business. The moneys of the alleged firm were kept in his sole name in bank. He employed people to help in the business. He had the papers. Ervin was an old man then, beyond three score and ten, so bad in health that during the alleged partnership he was compelled to go South. He had lost his memory, was weak in mind, and considerable evidence shows that he was really not competent to transact business, and in fact, the most that can be said against him is that he seldom participated in the business. Now, it was peculiarly the duty of Hinkson, under these circumstances, to properly conduct and keep books of the business. In *Stout* v. *Seabrook*, 30 N. J. Eq. 187, it was held that a decree requiring a copartner to account should be denied in every case where it appears the party seeking the account has, by his *laches*, rendered it impossible to do full justice to both parties. In the above cited case of *Hall* v. *Clagett* it was held by the Maryland Court of Appeals that it is the duty of each partner to keep precise accounts of his transactions, and if there has been a total failure to do so, it is good reason

against an account. There were no firm assets at the close of the alleged firm. The books and papers, what there were, went into Hinkson's hands. Ervin did scarcely any business, we may say, but went South in January, 1882, about one year after the commencement of the business, and it then practically closed, though there is one check, May 10, 1884. After Ervin went South, Hinkson did all the business, as practically he had done before. The whole thing was throughout in his hands, and active, we may say sole, agency. The little that Ervin ever did was likely to save himself as surety on notes for Hinkson, who was insolvent, all the property he had doing business with being in his wife's name. There is an allegation in the bill that Ervin received and did not account for firm assets, but, as is the case with several other material reckless allegations, there is no proof of it. What was there to settle? Thus it appears that everything was in Hinkson's hands, and this justifies the application to this case of the remarks of Judge Snyder in *Sodiker* v. *Applegate*, 24 W. Va. 414: "The plaintiff was the person who had charge of the business, and, if there was any partnership, he was the partner to render an account, not the defendant. * * * If there were any assets or profits, they ought to be in the hands of the plaintiff as acting partner, and therefore cause of suit might exist against him for an account; but it is difficult to see why he should have occasion to sue the defendant, who had nothing to do with the management of the alleged partnership."

Finally, there is another consideration operative against Hinkson's call for an account, which, if we may not exactly rank it as *laches*, yet, mingled with other things above given, fortifies the conclusion of the Circuit Judge that the equities of the case were with the defendant. The partnership terminated January, 1882. Never did Hinkson ask a settlement of Ervin, as he himself says. No settlement was asked until asked by Everett, a general attorney in fact appointed by Hinkson, March 31, 1887, and this suit was brought in August, 1887. If Ervin owed a large sum, why did Hinkson, an insolvent and needy man, never even ask anything for so long, especially as he knew Ervin was frail and failing?

Ervin took a deed in his own name for a lot on which the business was carried on. This deed dates July 30, 1881. Hinkson claims he paid five hundred dollars on the four thousand three hundred dollars of its cost, and that the balance was paid out of firm assets, though Ervin's check shows he paid it, and Hinkson claims a half in the property. Why did he let the claim sleep so long? He knew of the deed in Ervin's name. The five hundred dollars never went on this property, but was Mrs. Hinkson's separate estate money, and the check for it was given Ervin to go on a mortgage for two thousand, five hundred dollars he held on her land. The claim that this five hundred dollars went on this lot's purchase money, and that Hinkson owned an interest in it as partnership property, is repelled by the fact, pointedly stated by himself, that the property was paid for before the alleged partnership began, and by the fact that Mrs. Hinkson demanded that Ervin credit the five hundred dollars on her debt to him. But Hinkson lets time go on without moving, —Ervin an old man, away up in the seventies, frail of body, weak and weakening of mind, his memory going, as Hinkson knew—until, after years, when Ervin had totally lost his memory of past affairs, and was far sunk in senility, so that he was found utterly incapable of giving a deposition in the case to give us his version of the matter, Hinkson brings this suit to burden Ervin, a man of very considerable means, on Hinkson's own testimony chiefly. When this suit was brought, Ervin might as well have been in his grave, so far as his capacity to defend it is concerned; for, according to the evidence of physicians and others, he was afflicted with a peculiar phase of mental disease which cast all the affairs and events of his past into the night of oblivion and forgetfulness. His mind was otherwise weak. I incline to think Hinkson's evidence incompetent, under section 23, chapter 130, Code, forbidding a party, or one interested, to give evidence of transactions had with one "insane or lunatic," both words being used. The reason for the exclusion is that one party shall not be heard if the other is insane enough to be disabled from giving evidence. But, if this is not so, it is a potent circumstance with others going to deny

relief. Hinkson delayed until the other party was incompe-
tent to tell us his side, and now asks a decree mainly on his
own evidence. He never made any demand for years, and
not then, until Ervin was pressing a mortgage which he had
on Mrs. Hinkson's land, and it may be that this is the foun-
tain and mainspring of the demand sought to be asserted in
this case.

We are asked to suppress or ignore the deposition of Hink-
son because of the death of Ervin since this appeal was ta-
ken. No authority is cited to support the motion but *Zane*
v. *Fink,* 18 W. Va. 747-752. We have no other authority, and
do not think this supports the motion.

We are of the opinion the deposition can not be excluded
in this court, because we must hear the case on the record as
it was when the case was heard in the court below. Decree
affirmed.