# CHARLESTON.

R. L. LIPSCOMB *v.* JOHN D. BALLARD *et als.*

(No. 6372)

Submitted February 5, 1929.   Decided February 19, 1929.

*Buford C. Tynes* and *Randolph Bias,* for appellants.
*Goodykoontz & Slaven, H. F. Porterfield* and *Russell S. Ritz,* for appellee.

MAXWELL, JUDGE:

In the spring of 1926, R. L. Lipscomb, a road builder and contractor, plaintiff below, heard that a contract was to be let for road building in and by the City of Williamson. Lipscomb had several projects afoot at the time, one at Landgraff, McDowell county, and one in Kentucky. In the latter he was associated with J. C. Ballard under the name of Ballard & Lipscomb, Inc. Upon hearing this report, Lipscomb journeyed to Williamson, and learned of the successful bond issue for the work. He then interested J. C. Ballard in this project and likewise told one K. D. Stoner, who had been associated with Lipscomb for some time in other work and who was at that time working at Landgraff, that with Ballard's permission, he, Lipscomb, would take him, Stoner, in as an equal partner. Ballard consented and the three of them made several trips to Williamson and figured on the work together.

Later on and just before the letting of the contract, J. D. Ballard, father of J. C. Ballard, and a man of wealth and high repute, appeared in the transaction. Whether this came about at the solicitation of Lipscomb, or through a desire of J. D. Ballard to associate himself with the other three men, the record does not disclose. The point is immaterial. Suffice to say, by October 8, 1926, the four men had banded themselves together, submitted bids for the improvement of West Fourth Avenue, Williamson, and on that day a contract for the doing of such work was signed "Ballard & Lipscomb, by R. L. Lipscomb." The bond accompanying such contract recited "* * * that we, J. C. Ballard, J. D. Ballard, R. L. Lipscomb and K. D. Stoner, partners as Ballard & Lipscomb, as principal * * *", and was signed "Ballard & Lipscomb, by R. L. Lipscomb, principal."

A second contract for the improvement of East Fourth Avenue was executed in the same manner on October 22, 1926, and the accompanying bond was signed "Ballard & Lipscomb, by K. D. Stoner". R. L. Fryer, an insurance agent, through whom these bonds were procured, testified that representation was made to his agency that the firm of Ballard & Lipscomb was composed of the four men above mentioned, and further, that the application and request for bond was made at the solicitation of both J. D. Ballard and Lipscomb and that Stoner was present.

A. P. Persinger, an employee of the Persinger Supply Company, testified that he was present at the time of the letting of the contract, and understood that the firm had equipment and machinery which could be got on very short notice, and that he regarded the four men above mentioned as partners. He testified under cross-examination that it was his understanding that each member of the firm was to put in $2,000.00 in cash.

Whatever may have been the understanding between these four men, it was never reduced to writing. Lipscomb testifies to a definite understanding as to the amount of capital each was to contribute and the form that capital was to take. "Q. What was the understanding at the time of the obtaining of the contract, or before the obtaining of the contract from

the City of Williamson with reference to how much capital was to be needed in the partnership?'' Over objection of defendants to said question, Lipscomb answered: ''That was decided on when we were awarded the contract. J. D. Ballard asked me what would be necessary, and I told him that each member put in $2,000.00 figuring my equipment at $2,000.00 for my part.''

Lipscomb had reference to his equipment which he recently used at Landgraff, and could be transferred to Williamson in a short time. Bearing out this understanding, D. D. Smith, a salesman for the Banks-Miller Supply Company of Huntington, testified that J. D. Ballard upon being canvassed to buy new equipment told him they needed practically nothing to do that work. The machinery was brought to Williamson and the work commenced under the contract the latter part of October, 1926. Lipscomb was in charge of the job with Stoner as his assistant, and the same arrangement obtained until the work was discontinued about December 20, 1926, due to the setting in of winter.

That the job did not progress with contemplated smoothness, and that a complete understanding as regards Lipscomb's contribution to the undertaking did not exist, is evidenced by the correspondence of the time and the testimony of witnesses. We find Lipscomb writing to J. D. Ballard on October 29th saying: ''The only way I see for us to make any money there is to let only two people handle it, therefore I am turning it over to you and Stoner for management and I assure you that I will not criticise the management regardless of what happens. I will be of any assistance I can, when wanted, at any time the Kentucky or other work doesn't require my time.'' Lipscomb did not in fact at that time surrender the work as his letter indicated that he was doing. It appears that Lipscomb's equipment though probably suited to previous jobs and estimated in value by various witnesses at $5,000.00, did not properly function at Williamson. Witnesses testify that the paver did in five or six days what could normally have been done in one day. Furthermore, the mixer appears to have been too large to allow traffic to

698

pass on the comparatively narrow Williamson street where the work was being performed. At any rate, only a part of the Landgraff equipment was used on the job, although the record shows it was kept there throughout the time.

As to the misunderstanding about Lipscomb's share of the capital to be contributed, in a letter written to J. D. Ballard, dated October 10, 1926, Lipscomb says: ''We have talked the money end over and decided that we can each put in $2,000.00 in money and paving equipment now on hand and handle the job.'' Lipscomb says he meant that the three men were to put up $2,000.00 apiece and he was to put in his machinery, but that ''the letter was written in a hurry and just used the wrong word.'' In a telephone conversation about the 20th of October Lipscomb asked J. D. Ballard to send over the $4,000.00 representing the contribution of J. D. Ballard and his son. Ballard apparently understood Lipscomb to say that he (Lipscomb) and Stoner had already put up their money, for in a letter from J. D. Ballard to Lipscomb, dated November 12, 1926, Ballard says: ''* * * When you called me over the phone that night in regard to the Williamson work, I asked you whether you and Mr. Stoner had put up the money agreed upon and you told me that you both had done so. * * * I don't understand why you told me what you did over the phone. * * *.''

Later on, December 14, 1926, Stoner, Lipscomb and J. D. Ballard met at the Vaughan Hotel at Williamson to talk over matters relative to the work. Lipscomb testified that Ballard was reluctant to assent to his putting in his equipment in lieu of $2,000.00 and left it up to Stoner; that Stoner did not want to take the responsibility and that neither of them would deny or admit that such an arrangement had been made. Lipscomb further testified that he saw that they were working to get him out of the company, so he made them a proposition to let him out. They countered with a proposition that he could put up his $2,000.00, and they would rent the equipment from him. Presumably no agreement was reached, for we find Lipscomb writing to J. C. Ballard, December 18, 1926, and saying: ''There has been no definite decision as to partnership at Williamson.''

Despite numerous letters between the parties, the difficulties could not be ironed out. Added to this Lipscomb and J. D. Ballard disagreed on the type of truck to be used, and Lipscomb ascribed this as the real reason for his breach with the other three men. As a consequence when the work was resumed in the spring of 1927, Lipscomb was not there, but the work progressed under the superintendence of Stoner. During the spring an interchange of letters took place which throws light on the situation. In a letter written to Stoner on March 19, 1927, and discussing the various arrangements which had taken place between the men, Lipscomb says: "Another proposition I will make the Company, is to be relieved of all responsibility in connection with the Contract and be paid a salary and expense, as stated above, and rent the equipment to you for the duration of the work. The other proposition, is, to put the Equipment in the Company for one-fourth interest of $8,000.00, or rather for a fourth interest with a value of $2,000.00." Replying to this letter Stoner writes, on March 22, 1927, "if such a sale was made, we understand that you wish to be relieved of all responsibility and liability for and in connection with the contract, in other words you wish to withdraw from the firm altogether." On June 22, 1927, Lipscomb wrote to Stoner saying: "I wish to advise you however that I am still a Partner in Ballard Lipscomb Company, now under Contract with the City of Williamson *haveing* equal interest and rights with the other three members, J. D. Ballard, J. C. Ballard and yourself, and when the work is completed will call on you for an accounting." On July 14, 1927, Stoner wrote Lipscomb in explanation of the entire transaction as far as the two Ballards and he were concerned, and said: "In view of the circumstances, we have felt justified in regarding you as not being in any sense a partner with *use* in the enterprise in question. If, however, you will have $2,000.00 in Mr. Stoner's hands at Williamson available for the work in question on or before July 30th, we will credit your account therewith and carry you for such interests as said contribution entitles you * * *." The letter was signed K. D. Stoner and J. D. Ballard by K. D. Stoner.

Due to the inability of the parties to adjust these differences Lipscomb instituted this suit at November Rules 1927. The suit is predicated on the theory that there was a partnership between the parties. The plaintiff prays for a dissolution of the alleged partnership and seeks an accounting; also that he be decreed his share of the profits arising from the Williamson job. Incidentally he asks that the Ballards and Stoner be enjoined from collecting any balance due from the City of Williamson and that the city be enjoined from paying them anything under the contract. A preliminary injunction as prayed was awarded November 26, 1927.

By sworn pleas the individual defendants deny that there was in fact a partnership existing between them and the plaintiff as alleged by him in his bill. None of the defendants answered the bill, but the individual defendants relied on their pleas aforesaid; on the further plea that there was no memorandum in writing between the parties bearing on the question of partnership and that therefore in no event could the plaintiff prevail because the contract to be performed by the purported partnership, viz, the Williamson job, was not to be completed within a year, under the very terms of the contract with the city,—hence the statute of frauds, Code, chapter 98, section 1, sub-section 7; and on a motion for continuance in order that they might take the deposition of defendant J. D. Ballard who was ill. The primary matter for determination is one of fact,—was there a partnership? The other questions raised on the record, are of secondary importance and it will not be necessary that they be considered in the light of the conclusion we have reached on the main question. By order entered August 25, 1928, the circuit court adjudged and decreed that there was a partnership between the parties as alleged by the plaintiff in his bill, and directed that the individual defendants answer the bill and make the discovery therein prayed for within thirty days from that date. From that decree this appeal is prosecuted by the defendants other than the City of Williamson.

The controlling question, stated, must be approached under full recognition of the requirement of the law that the burden of proving a partnership rests upon him who alleges it, and

that in proving a partnership the evidence must be stronger between partners than when third persons assert it. *Hinkson* v. *Ervin,* 40 W. Va. 111, 20 S. E. 849; Rowley on Partnership, Vol. 2, section 876. Has the plaintiff discharged that burden? We hold that he has not discharged it because the evidence as recited necessitates the conclusion that as a condition precedent to the consummation of the plan for the formation of a partnership to undertake the Williamson job each of the four contemplated partners was to pay into the firm the sum of $2,000.00. Each of the Ballards and Stoner paid his $2,000.00, but the plaintiff did not comply with the requirement that rested upon him in that particular. His present contention that certain of his machinery and equipment was to be turned into the firm in lieu of the payment by him of the sum aforesaid is not well taken in view of his above quoted written statement to J. D. Ballard: ''We have talked the money end over and decided that we can each put in $2,000.00 in money and paving equipment now on hand and handle the job.'' His feeble explanation that ''the letter was written in a hurry and just used the wrong word'' is far from persuasive. And further, his present position that there was a definite understanding as to the formation of the alleged partnership does not accord well with the above quoted statement in his letter of December 18, 1926, to J. C. Ballard: ''There has been no definite decision as to the partnership at Williamson.'' The fact that Stoner signed the name of the contemplated partnership to the bond of October 22, 1926, and that in other preliminary matters the parties acted as though dealing as a firm or a partnership is in nowise controlling in a controversy among the partners themselves. There is a vast difference between an executory contract to form a partnership and an executed agreement creating a partnership. ''An agreement to form a partnership does not of itself create the relation; it must have been executed by mutual performance of the things contemplated.'' *O'Neal* v. *Moore,* 78 W. Va. 296.

Nor are we concerned here with the fact that the plaintiff contributed valuable services in the construction work at Williamson and that some of his machinery and equipment

was used therein. To enforce recovery for the value of his services and the use of his property his remedy at law is plain.

On the vital question of the effect of a condition entering into the formation of a contemplated partnership the authorities are voluminous. "If the agreement of co-partnership is executory and conditional, no partnership is created by it until all the conditions are fulfilled." Parsons on Partnership, (4th ed.), section 12. "When, however, the agreement provides for a partnership at a fixed date, in the future, or upon the performance of certain conditions precedent by any of the parties, the partnership will not commence, until the time arrives, or until the conditions are performed or waived." 30 Cyc., p. 417. In the case of *Meagher* v. *Reed*, 14 Colo. 335, we find the following succinct statement of this proposition: "A marked distinction exists in law between an agreement to enter into the co-partnership relation at a future day and a copartnership actually consummated. It is an elementary principle that a partnership in fact cannot be predicated upon an agreement to enter into a copartnership at a future day unless it be shown that such agreement was actually consummated. In the language of the text-books, the partnership must be 'launched.' To constitute the relation, therefore, the agreement between the parties must be an executed agreement. So long as it remains executory the partnership is inchoate, not having been called into being by the concerted action necessary under the partnership agreement. It is undoubtedly true that a partnership *in praesenti* may be constituted by an agreement if it appears that such was the intention of the parties. But where it expressly appears that the arrangement is contingent, or is to take effect at a future day, it is well settled that the relation of partners does not exist, and that, if one or more of them refuse to perform the agreement, there is no remedy between the parties except a suit in equity for specific performance of an action at law for the recovery of damages, should any be sustained."

A clear statement is found in the fourth point of the syllabus of the case of *Bird* v. *Hamilton*, Michigan Reports of 1845, page 361: "Where a party has failed to perform the pre-

liminary conditions, upon the compliance with which a partnership was to be formed, and the other party to the agreement to enable him to perform, furnished his own capital, and for a short while carried on the business in the name of the proposed firm, it was held, that this was no waiver, and could not entitle the defaulting party to the rights of a partner.'' See, also, *O'Marrow* v. *State*, (Tex.), 147 S. W. 252; *Coens* v. *Marousis*, (Pa.), 119 Atl. 549; *Westwood* v. *Cole*, 120 N. Y. Supp. p. 884. From the authorities and on principle it is clear that where there are mutual and concurrent promises between parties in contemplation of the formation of a partnership that they will contribute capital in certain designated proportions, such contribution, unless waived, is a condition precedent to the right to claim profits. Thus we reach the conclusion that the issue on the individual defendants' sworn pleas of no partnership should have been resolved in their favor and the plaintiff's bill dismissed. We therefore reverse the decree of the circuit court and will enter decree here dismissing the plaintiff's bill with costs.

*Reversed and rendered.*