[No. 22154. Department One. September 22, 1930.]

G. G. CRUICKSHANK, *Respondent,* v. J. P. LICH *et al.,*
*Appellants.*[1]

*Lund & Dodds,* for appellants.

*T. B. Southard, E. W. Schwellenbach,* and *R. F.
Cater,* for respondent.

MILLARD, J.—The purpose of this action is to recover
three thousand dollars advanced to the defendants and
balance due for services rendered to the defendants.
Plaintiff alleged that, by contract of November, 1922,
he agreed to purchase a five-thousand-dollar interest
in the ranch of the defendants, who agreed to employ
the plaintiff on that ranch at a salary of one hundred
dollars monthly. From November 1, 1922, to July 1,

[1]Reported in 291 Pac. 485.

1926, plaintiff paid in cash to the defendants and earned in wages a total of seventy-four hundred dollars. Defendants refused to comply with the contract and paid to plaintiff, on account of wages due, four thousand and seventy dollars. For a second cause of action, plaintiff alleged a balance due for boarding employees of the defendants.

Answering, defendants counterclaimed for merchandise supplied to, and house used by, the plaintiff, and pleaded a defense in the nature of a confession and avoidance as follows:

Admitting they entered into the contract of November, 1922, the defendants allege that the agreement was canceled by mutual consent of the parties in January, 1924, plaintiff releasing any claim he had to an interest in the ranch. Thereupon, the plaintiff and defendants entered into a copartnership to carry on a dairy business. Plaintiff agreed to contribute to the partnership the balance due for wages and the money paid by him to defendants on the original agreement. Plaintiff was to have the management of the dairy, the profits and losses of which were to be shared equally. Plaintiff abandoned the business about July 1, 1926. Defendants pray for an accounting of the copartnership affairs and for judgment on the counterclaim.

The trial resulted in findings of fact, conclusions of law and judgment in favor of the plaintiff for thirty-three hundred and fifty-six dollars and seventy-five cents paid to defendants for the purchase of stock; and in favor of the defendants for two hundred and twenty-one dollars and forty-five cents as a counterclaim against the plaintiff. The defendants have appealed.

The facts, summarized as follows, disclose that appellants accepted as a loan money advanced to them by respondent for stock in a proposed corporation,

that appellants and respondent were not partners, and that the relationship of respondent towards appellants was at all times that of an employee:

The "J. P. Ranch" in Grant county is owned by the appellants, a marital community. In November, 1922, appellant husband, a man of considerable business experience, represented to respondent, a farm laborer, that he was forming a corporation, to be known as the "J. P. Ranches Company," to take over his ranch, which was valued at one hundred and fifty thousand dollars.

The court expressed the view that Lich had had a large business experience and "was a 'smooth talker' and a shrewd dealer, . . . plaintiff who had the greater part of his life worked as a farm laborer, but who, outside of farm work, was a child in experience."

Respondent was induced by Lich to enter into a contract for the purchase of shares of stock, to the extent of five thousand dollars, of the proposed corporation. The stock was to be issued to respondent upon the payment of four thousand one hundred and sixty-six dollars and fifty cents represented by two notes. One of the notes was the personal note of respondent for twenty-one hundred and sixty-six dollars and fifty cents in favor of Lich. The other was for two thousand dollars drawn by G. J. Egbert in favor of respondent, who assigned the note to Lich and guaranteed payment thereof.

The contract also provided that respondent and his wife were to be employed on the ranch at an agreed wage of one hundred dollars monthly, which was to be applied on the payments for the stock. A man named Shepard, who later upon demand received refund of a part of his money, also purchased stock in the proposed corporation. Appellants were unsuccessful in their endeavors to sell stock to others. The

names of respondent and a number of other persons as directors were printed, under the heading of "J. P. Ranches Co.," on the proposed corporation's stationery ordered by Lich. With the exception of the appellants, the names were printed on the stationery without the knowledge or consent of any of the parties concerned. An account was opened in a local bank under the name of the "J. P. Ranches Company." The foregoing constitute the only attempts ever made by appellants to incorporate their ranch.

From the date of the execution of the contract in 1922 to January 1, 1924, respondent was paid about three hundred dollars in wages although he had earned approximately fourteen hundred dollars. During this period, the respondent paid to appellants one thousand dollars in cash on his personal note, and appellants collected a large part of the Egbert note. On January 1, 1924, respondent demanded of Lich his stock in the corporation. The excuse offered by Lich for not issuing the stock to respondent was that "he would have to go over his books."

The repeated demands of respondent for his stock resulted in a proposal by Lich, February 1, 1924, that the respondent and the appellants form a partnership for the purpose of conducting a dairy business on the ranch. Respondent's share was to be the amount of money he had paid on the stock. The appellants were to contribute an equal amount, to be used for the purchase of cattle. The proposal was rejected by respondent, who refused to sign the articles of partnership; in fact, respondent at all times refused to enter into any partnership agreement, oral or written, with the appellants.

Without the knowledge or consent of the respondent, Lich opened an account in a local bank for the dairy company, had checks prepared with the name of

the company printed thereon, and ordered the stationery on which appear the names of Lich and the respondent under the heading "Cruickshank Dairy Company." Respondent continued in the employ of the appellants, his duties being divided between the ranch proper and the dairy. He worked where assigned by the appellants, and, as was required of the other ranch employees, filled out time slips showing the distribution of his labor.

As proof of the partnership, appellants stress the fact that respondent signed with Lich a certificate of assumed name reading as follows:

"This is to certify that J. P. Lich and George Cruickshank are and have been since the 1st day of January, 1924, conducting a dairy business at or near Wilson Creek, Grant county, Washington, under the name of Cruickshank Dairy Company."

It appears that, in December, 1924, an action was commenced in Spokane county by the "Cruickshank Dairy Company" against another dairy company. A demurrer was interposed on the grounds that the plaintiff had no legal capacity to sue, and for defect of parties plaintiff. Respondent was called to Spokane and informed that the suit could not be prosecuted unless a certificate of assumed name was filed in the office of the county clerk. It is manifest that the respondent signed the certificate with Lich for the purpose of assisting his employers. He did that the same as he would have performed any duty to which he was assigned by his employers.

Lich had charge at all times of the accounts of the dairy business and of the two bank accounts (The J. P. Ranches Company account and the Cruickshank Dairy Company account). Lich never consulted with respondent as to the business of the dairy. The dairy company's bank account was not permitted to increase.

Whenever any considerable sum was paid into the dairy account for products sold by the dairy business, Lich immediately transferred that money from the "Cruickshank Dairy Company" account to the account of the "J. P. Ranches Company."

The evidence is overwhelming that the dairy was never operated as a partnership proposition, but was at all times the property of the appellants; that respondent was nothing more or less than an employee on the ranch, and that Lich repudiated the contract of November, 1922, and treated the money paid for stock as a debt, as money received from, and owing to, respondent. Lich listed the ranch for sale, and told various prospective purchasers, while discussing terms, that it was necessary to have cash down because he, Lich, owed respondent between four and five thousand dollars. In none of those conversations did he mention any partnership existing between himself and respondent. At the time he was endeavoring to sell the ranch to one Westover, Lich informed Westover that respondent was "his foreman on the ranch." To another prospective purchaser he said that respondent was his herdsman.

In 1926, the appellants sold the ranch, including the dairy business, as their sole property, to J. F. Potter, and moved off of the ranch. Mr. Potter was informed by Lich that appellants were paying the respondent one hundred dollars a month, and that they gave to him half of the cream checks for milking. When Mr. Potter requested an inventory of the number of cattle, hogs and sheep on the ranch, Lich stated that was unnecessary, as everything on the place was his. An action by Potter against appellants resulted in a rescission of the contract of sale. During the time the Potters were on the property, they operated the entire

ranch, including the dairy, and paid to respondent one hundred dollars a month as wages.

While the Potter deal was under way, respondent demanded payment of Lich of the money owing to him. Lich promised to send a settlement from Portland, Oregon, which was not done. Lich wrote to respondent that he would give to the respondent a five-thousand-dollar interest in a ranch in the Willamette valley in return for the amount that he owed respondent. On his return from Portland, Lich repeated that offer to respondent. Respondent repeatedly demanded stock in the corporation. No corporation was formed. By words and acts, appellants accepted, from January 1, 1924, the role of debtor, and the respondent became his creditor for the money advanced for the purchase of stock in the fictitious corporation. The payment of the loan was frequently demanded. The disregard of respondent's demands culminated in an action for the return of the money. The court found the facts to be as recited above, and entered judgment accordingly.

Error is first assigned on the court's refusal to grant appellants' motion for a nonsuit. Appellants argue that respondent seeks to recover, as for a money demand, on a contract for an interest in property which may be enforced by specific performance; that failure to show compliance with all of the terms of the contract and neglecting to allege a demand of any kind preclude recovery by respondent.

Respondent alleged an agreement for the purchase of a five-thousand-dollar interest in appellants' ranch; that, under the terms of the contract, respondent was to be employed on the ranch at an agreed wage of one hundred dollars monthly; that, relying upon the agreement, he paid to the appellants three thousand dollars, and performed labor on the ranch of the value of forty-

four hundred dollars; that appellants have paid to him, on account of wages earned, four thousand and seventy dollars; that appellants at all times treated the ranch as their own, and refused to recognize the respondent as having any interest therein, and have never offered to comply with the contract in any particular. By answer, the appellants confessed and avoided. They admitted entering into the contract for the sale of an interest in the ranch to respondent, alleged the contract of employment was for the joint services of respondent and wife, and further alleged that, on January 1, 1924, the contract was canceled by the parties; that respondent and appellants entered into a copartnership agreement for the carrying on of a dairy business, in which *respondent purchased a one-half interest with thirty-three hundred and fifty-six dollars and seventy-five cents the appellants owed respondent for money advanced for the purchase of shares of stock and for wages due.*

The allegations of the complaint were not as full and particular as they should have been; however, the allegations were sufficient to advise the appellants of the nature and amount of the demand against them. Particularly is this true in the light of the plea of confession and avoidance, the admitting in evidence, without objection, of the original agreement and other evidence in the cause. If the appellants had made a showing to the trial court that they were misled to their prejudice, the court would have ordered the pleadings amended upon such terms as would have been just. It is clear that the respondent elected to sue for a return of his money and for wages due.

The only questions to be determined, in view of the allegations of the answer, were, under what agreement, if any, the contract was canceled, and what was the subsequent relationship of the parties. The appel-

lants admitted the execution of the 1922 contract, and alleged, in avoidance thereof, mutual rescission of the agreement and the making of another contract to enter into a partnership. Under this state of the pleadings, it was competent to show the following: The execution of the 1922 contract; the terms of that contract; nonperformance of the terms of that contract or its rescission; the subsequent partnership agreement, if any there was; performance or nonperformance of the provisions of the partnership agreement; whether the money advanced by respondent was considered by appellants as a loan (the evidence clearly established that appellants so deemed it and the answer in effect so alleged); and whether respondent was, in fact, at any time, a partner or at all times an employee, as well as the amount due him as wages and the amount due on the loan. The motion for nonsuit was properly overruled.

Appellants next contend that a partnership existed, therefore the respondent could not maintain an action for money advanced to the partnership, as the proper remedy is by an accounting.

If this were an action by a third party, a different question would be presented. Did the minds of the parties meet? The draft of the partnership articles was not signed by respondent. That respondent did not sign those articles, strongly tends to show there was no partnership. *Detemple v. Mitchell,* 15 Colo. 127, 61 Pac. 434. The burden of proving a partnership is upon the one alleging it. As to third persons, less proof is required to show a partnership than as between the parties themselves.

"The burden of proving a partnership rests upon him who alleges it, and that in proving a partnership the evidence must be stronger between partners than when third persons assert it." *Lipscomb v. Ballard,* 106 W. Va. 694, 146 S. E. 826.

"The particular test as to the existence of the partnership relation which is most widely accepted today and which is applicable especially as between the parties themselves irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of the members. · . . . On the other hand, if the terms of the contract existing between the parties do not constitute a partnership, none will be declared, even though the parties in words call the arrangement one." 20 R. C. L. § 36, p. 831.

Manifestly, there was no partnership.

It clearly appears from a careful examination of the record (five hundred and eighty-nine pages of testimony were taken during the trial) that the court's findings of fact are supported by a preponderance of the evidence.

The judgment should be, and it is, affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and BEALS, JJ., concur.