FILED
11/2/2020
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| NARINDER SAMRA and HARMINDER SAMRA, a married couple, | No. 80582-7-I |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| PRITPAL SINGH and GURBAKSH KAUR, a married couple; BHUPINDER CHOKAR and "JANE DOE" CHOKAR, a married couple; and KULWANT SINGH and "JANE DOE" SINGH, a married couple, | |
| Respondents. | |

VERELLEN, J. — Narinder and Harminder Samra formed a partnership with several others to purchase, develop, and sell some vacant tracts of land. Years after the partnership made this purchase, the property was foreclosed upon and sold at a trustee's sale, and the Samras lost their investment. Based on these and other events, the Samras filed suit for a declaration of partnership, breach of fiduciary duties to the partnership, unjust enrichment, equitable mortgage, civil conspiracy, and joint venture liability. They also filed a post-foreclosure lis pendens on the property at issue.

In a series of summary judgment orders, the trial court dismissed all of the Samras' claims and cancelled the lis pendens as wrongly filed. We affirm.

FACTS

Narinder and Harminder Samra formed a partnership with Pritpal Singh, Gurbaksh Kaur, and Bhupinder Chokar to purchase two parcels of property in King County that they referred to as "the Roseberg Project," develop it, and sell it for profit.[1] They did not file a statement of partnership authority with the secretary of state.

In 2007, the partnership paid approximately $716,000 for the Roseberg Project property.[2] Of that amount, Pritpal contributed $25,000, Bhupinder paid $250,000 (with a check from the account of Kulwant Singh),[3] and the Samras contributed $210,000 in cash and borrowed the remaining $231,000, in their name only, from Washington Mutual Bank.[4] The Samras secured this loan with a deed

---

[1] While the entire "Roseberg Project" consisted of three parcels of property, the third parcel (the Walker-Military lot) had been purchased and owned by nonparties and is not at issue on appeal. Thus, our reference to the "Roseberg Project property" means the two lots that the partnership acquired.

[2] The statutory warranty deed conveyed title to the Samras, Pritpal, Gurbaksh, and Bhupinder. For clarity, we refer to the respondents by their first names.

[3] Bhupinder and Kulwant are brothers. Although the $250,000 check came from Kulwant's account, there is no dispute that the funds were Bhupinder's.

[4] In obtaining the loan, the Samras submitted a "Gift Letter Affidavit" signed by Kulwant in which he identified himself as the Samras' "uncle" and that he was gifting them $250,000. Clerk's Papers (CP) at 2361. This "gift" appears to be the check that Kulwant contributed on behalf of Bhupinder.

of trust against the Roseberg Project property, which they executed along with Pritpal, Gurbaksh, and Bhupinder.

In 2008, the partners and others met to clarify various aspects of the Roseberg Project. In a document entitled "Meeting concerning Roseberg Project Dated 12/10/2008," the attendees listed their respective shares and ownership interests in the Roseberg Project as follows: Bhupinder, 33 percent; Pritpal, 13 percent; Narinder, 35 percent; Gurmail Singh, 13 percent; Gurpal Singh, 5 percent; Karnail Johal, 0 percent; and Kulwant,"N/A".[5]

In 2009, Narinder and Kulwant opened a joint bank account for the purpose of the Samras being able to see that the other partners were making monthly payments on the promissory note. Kulwant deposited the partners' payments, not his own funds, into the joint account for nine months. However, those payments stopped, and the Samras' loan went into default.

In 2010, the Samras sought to get out of the partnership and asked that the other partners buy them out. After a meeting some, but not all, of the partners executed a document entitled, "Roseberg Project Partner Share Redemption Agreement Dated [November 27, 2010]" (the Redemption Agreement).[6] In pertinent part, the Redemption Agreement stated:

> This agreement dated [November 27, 2010] is between Narinder Singh Samra and Harminder Kaur Samra (hereinafter referred to as "Samras") and Bhuppinder Singh Chokkar, Pritpal Singh and Gurbaksh Kaur, Gurmail Singh and Gurpal Singh

---

[5] Kulwant signed this document as a "(witness) via invite." CP at 248.

[6] CP at 114-16.

3

(hereinafter referred to as the "Remaining Roseberg Partners"). "Parties" means Samras and Remaining Roseberg Partners.

. . . .

(1) The Parties agree that the Samras are voluntarily withdrawing from the Roseberg project partnership and shall have no further interest in the project or the project properties, shall no longer have the authority to make any decisions regarding the property or project and shall not be responsible for any outstanding or future expenses of the project or the property.

(2) The Remaining Roseberg Partners agree to pay off the Samras as follows: A final and total pay off amount of $120,000.00 shall be paid in three separate installments[.]

. . . .

(5) The Parties agree that the Samras shall keep the Chase bank mortgage loan in place in the Samras' names until the completion of the project or until date [November 1, 2012], whichever occurs earlier.

. . . .

(7) The Parties agree that the Remaining Roseberg Partners shall make the outstanding mortgage loan payments current. Future mortgage loan payments shall be made on time by the Remaining Roseberg Partners. . . .

. . . .

(11) The Parties agree that all communication between the Samras and the Remaining Roseberg Partners shall be in writing.

(12) The Parties agree that this is a final and binding agreement.

(13) The Parties agree that any disputes shall be resolved by mediation and arbitration under the State of Washington laws.[7]

In December 2010, the Samras signed a second Redemption Agreement, but no other partners signed that agreement.

In June 2016, the Samras received a notice of foreclosure and notice of trustee's sale of the Roseberg Project property set for a date in October 2016. The Samras were able to continue the trustee's sale to December 2016.

On July 15, 2016, the Samras received an offer to purchase the Roseberg Project property for $550,000 if 12 or more homes could be built on it, or for $500,000 if 10 or 11 homes could be built on it. The offer expired five days later, on July 20, and was subject to a feasibility contingency. In a July 27 letter, the Samras notified Pritpal, Gurbaksh, Gurmail, Gurpal, and Karnail of the offer and asked them to consider a counteroffer that they intended to propose. This letter was not sent to Bhupinder or Kulwant. On August 30, without having received a response from any of the other partners, the Samras made a counteroffer to sell the Roseberg Project property for $525,000. A few weeks later, the potential buyer rescinded its offer based upon the feasibility contingency.

On October 20, 2016, the Samras filed a complaint asking for declaratory relief that a partnership existed between themselves, Pritpal, Gurbaksh, and

---

[7] CP at 114. The record includes various spellings of Bhupinder's first and last names. We adopt the spelling used in the parties' appellate briefing.

Bhupinder. Later that same day, the Samras filed an amended complaint to add a cause of action for unjust enrichment against Pritpal, Gurbaksh, and Bhupinder.

In December 2016, Kulwant purchased the Roseberg Project property at the trustee's sale for $282,000. Days later, the trustee informed the Samras, Pritpal, Gurbaksh, and Bhupinder of this sale through a notice of completion of trustee's sale.

On March 1, 2017, the Samras filed a second amended complaint. In this pleading, the Samras added Kulwant as a defendant and commenced a cause of action for an equitable mortgage to the extent of the funds they borrowed against the Roseberg Project property. The Samras alleged that Pritpal, Gurbaksh, and Bhupinder conspired to prevent them from selling the Roseberg Project property at a price that would allow recoupment of their initial investment and equity and that they further conspired with Kulwant to purchase the property for a much lower price at the trustee's sale. They also asserted "claims for civil conspiracy and joint venture liability."[8]

Also on March 1, the Samras filed a lis pendens that notified the public of their action to establish an equitable mortgage on the Roseberg Project property, which was then owned by Kulwant. In his answer to the second amended complaint, Kulwant filed a counterclaim against the Samras for wrongful lis pendens.

---

[8] CP at 80.

6

In January 2019, Pritpal and Gurbaksh moved for summary judgment dismissal of the Samras' claims. The trial court granted the motion, concluding that (1) the Samras failed to produce evidence that would establish the elements of unjust enrichment as to Pritpal and Gurbaksh, (2) though Pritpal and Gurbaksh conceded that a partnership existed, the Samras had not advanced any arguments that would justify relief based solely on the existence of a partnership, and (3) because neither Pritpal nor Gurbaksh owned or possessed the Roseberg Project property, the Samras had no evidence to establish an equitable mortgage claim. The Samras moved for reconsideration, which the trial court denied.

In February 2019, Bhupinder also moved for summary judgment dismissal of the Samras' claims, asserting the same arguments previously advanced by Pritpal and Gurbaksh. In June 2019, the trial court granted Bhupinder's motion and denied the Samras' related motion for reconsideration.

In August 2019, Kulwant moved for summary judgment in which he sought dismissal of the Samras' claims, an order requiring the Samras to cancel the lis pendens, and an award of attorney fees and costs pursuant to RCW 4.28.328(3). In September 2019, the trial court granted Kulwant's motion. The Samras then released the lis pendens.

After considering the parties' briefing, the trial court found that the Samras "did not address the Lis Pendens and Equitable Mortgage claims in the written opposition to Defendants' Motion for Summary Judgment, nor did they address

these claims in oral argument."[9]  The court concluded that Kulwant should be awarded attorney fees and costs and entered judgment in favor of Kulwant.

The Samras appeal the summary judgment orders.

## ANALYSIS

The Samras argue that the trial court erred in summarily dismissing their claims against Pritpal, Gurbaksh, Bhupinder, and Kulwant.  They also contend that their lis pendens filing was substantially justified and that an award of attorney fees to Kulwant was unwarranted.  We disagree.

### I. Standard of Review

"We review summary judgment orders de novo, engaging in the same inquiry as the trial court."[10]  We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[11]  Summary judgment is proper if there are no genuine issues of material fact.[12]  A material fact is one that affects the outcome of the litigation.[13]

A defendant moving for summary judgment "has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent

---

[9] CP at 2513 (finding of fact 2).

[10] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[11] Fulton v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[12] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013) (quoting Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

[13] Janaszak v. State, Dep't of Soc. & Health Servs., 173 Wn. App. 703, 711, 297 P.3d 723 (2013).

evidence to support an essential element of [his or her] case."[14]  If the defendant meets this initial showing, then the inquiry shifts to the plaintiff to set forth evidence to support of his or her case.[15]  The evidence set forth must be specific and detailed.[16]  The responding plaintiff may not rely on conclusory statements, mere allegations, or argumentative assertions.[17]  If the plaintiff fails to establish the existence of an essential element that he or she bears the burden of proving at trial, then summary judgment is warranted.[18]  We may affirm on any ground supported by the record.[19]

## II. Partnership Formation

The Samras argue that there are genuine issues of material fact on whether a partnership existed among themselves, Pritpal, Gurbaksh, Bhupinder, and Kulwant.  While Pritpal, Gurbaksh, and Bhupinder each concede the existence of a partnership with the Samras, Kulwant does not.

---

[14] Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001).

[15] Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[16] Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

[17] CR 56(e); Vacova Co. v. Farrell, 62 Wn. App. 386, 395, 814 P.2d 255 (1991).

[18] Young, 112 Wn.2d at 225.

[19] King County v. Seawest Inv. Assoc., LLC, 141 Wn. App. 304, 310, 170 P.3d 53 (2007) (citing LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

A partnership is "an association of two or more persons to carry on as co-owners a business for profit."[20]  A partnership agreement must contemplate a common venture, a sharing of profits and losses, and a joint right of control.[21]  "A partnership cannot be created without the voluntary consent of all alleged partners."[22]  A party asserting the existence of a partnership has the burden of proof by a preponderance of the evidence.[23]  This evidence must be stronger where the dispute is between alleged partners rather than with a third party.[24]

Where, as here, there is no express partnership contract that identifies Kulwant as a partner, the existence of a partnership depends upon the intention of the parties.[25]  "That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties."[26]  Facts gleaned from the parties' conduct are preferred over anything the parties have said.[27]  "[C]ircumstantial evidence does not tend to prove the existence of a partnership, unless it is inconsistent with any other theory."[28]

---

[20] RCW 25.05.005(6) (defining "partnership")

[21] Eder v. Reddick, 46 Wn.2d 41, 49, 278 P.2d 361 (1955).

[22] Ferguson v. Jeanes, 27 Wn. App. 558, 564, 619 P.2d 369 (1980) (emphasis added) (citing Beebe v. Allison, 112 Wash. 145, 192 P. 17 (1920)).

[23] Eder, 46 Wn.2d at 48-49.

[24] Id. at 49 (citing Cruickshank v. Lich, 158 Wash. 523, 291 P. 485 (1930)).

[25] Malnar v. Carlson, 128 Wn.2d 521, 535, 910 P.2d 455 (1996).

[26] Id.

[27] Eder, 46 Wn.2d at 49.

[28] Id.

Here, even when viewed in a light favorable to the Samras, the evidence presented does not support the existence of a partnership with Kulwant. It is undisputed that the $250,000 Kulwant "gifted" to the Samras as their "uncle" were funds that Bhupinder contributed for his share of the Roseberg Project property. The statutory warranty deed for the Roseberg Project property did not convey title to Kulwant. Neither the 2008 memorandum regarding the partnership nor the 2010 Redemption Agreement identified Kulwant as a partner or indicated that he was entitled to any ownership shares of the Roseberg Project. The Samras do not point to any evidence that Kulwant shared in the Roseberg Project's profits and losses, that he had any rights to control the project or its property, or that he contributed any of his own funds to acquire shares of the partnership.

The Samras argue that Kulwant opened a joint account with Narinder into which he deposited partnership funds to cover the Samras' promissory note. But the fact that Narinder and Kulwant created a joint account does not make him a partner in the Roseberg Project.[29] There is no evidence that Kulwant deposited any of his own funds into this account or that he had authority to direct how the funds within that account were used.

The Samras also argue that we should find a partnership based on Kulwant's 2013 purchase of the Walker-Military lot and his 2016 purchase of the

---

[29] See In re the Estate of Thornton, 14 Wn. App. 397, 401, 541 P.2d 1243 (1975) (no implied partnership where the evidence was "as consistent with a finding that the appellant was a managerial employee authorized to incur financial obligations" on behalf of the partnership as it was that the appellant was a partner).

11

Roseberg Project property at the trustee's sale. But neither of these transactions establish that Kulwant was acting in partnership with the Samras.

In sum, the evidence does not support the Samras' claim that Kulwant was one of their partners in the Roseberg Project.[30]

### III. Breach of Fiduciary Duty and Partnership Damages

Next, the Samras argue that the trial court erred by summarily dismissing their breach of partnership fiduciary duty action against Bhupinder and Kulwant.[31] Having already determined that Kulwant was not a partner, it follows that this claim fails as to him. For other reasons, we conclude that the dismissal of this claim against Bhupinder was also warranted.

Partners are accountable to each other and the partnership as fiduciaries.[32] A partner has an obligation of good faith and fair dealing to discharge duties to the partnership and other partners under the terms of the partnership agreement.[33]

---

[30] For the first time in their reply brief, the Samras identify other activities that they contend show Kulwant was a partner. See Appellants' Reply Br. at 2-3. We do not address matters raised for the first time in reply briefs. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[31] In their briefing to the trial court, the Samras did not argue that Pritpal and Gurbaksh breached any fiduciary duties to the partnership but did do so as to Bhupinder and Kulwant. See CP at 237-41, 1231-35, 2433-35.

[32] Bishop of Victoria Corp. Sole v. Corporate Bus. Park, LLC, 138 Wn. App. 443, 456-57, 158 P.3d 1183 (2007).

[33] RCW 25.05.165(4).

Accordingly, each partner must fully disclose all material information relating to the partnership, avoid self-dealing, secret profits, and conflicts of interest.[34]

The Samras allege that there are genuine issues of material fact whether Bhupinder's failure to accept the July 2016 offer to purchase the Roseberg Project property breached the 2010 Redemption Agreement and violated his duty of loyalty and good faith.[35] The record does not support this claim. First, the evidence shows that the Samras' July 27, 2016 letter, wherein they notified some of the partners about the offer, did not include Bhupinder as one of the addressees. Second, even if Bhupinder did receive the letter, the offer to buy had expired pursuant to its own terms a week earlier on July 20. Lastly, the Samras' counteroffer to sell at $525,000 constituted a rejection of the offer because the "'acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract.'"[36]

The Samras also claim that material factual issues exist about whether Bhupinder breached his duty of loyalty and good faith by failing to provide documents they needed in their efforts to sell the Roseberg Project property. This

---

[34] J & J Celcom v. AT & T Wireless Servs., Inc., 162 Wn.2d 102, 107, 169 P.3d 823 (2007); RCW 25.05.165(2).

[35] They do not cite to any particular provision in the 2010 Redemption Agreement that Bhupinder breached or to any authority stating that such a breach is actionable. See Appellants' Br. at 19-20. Thus, we need not consider that aspect of their argument. See RAP 10.3(a)(6).

[36] Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994) (quoting Blue Mt. Constr. Co. v. Grant County Sch. Dist. 150-204, 49 Wn.2d 685, 688, 306 P.2d 209 (1957)).

claim consists of a single sentence in their brief.[37] "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."[38] In any event, the Samras do not identify any evidence in the record showing that they requested such documents from Bhupinder prior to the expiration of the July 2016 offer.

Next, in a closely related issue, the Samras argue that Bhupinder and Kulwant "were obligated to reimburse [them for the $231,000 loan] they incurred on behalf of the partnership."[39] Further, the Samras contend that this reimbursement "was to be accomplished through the sale of the Roseberg Project properties," which was "frustrated" when Bhupinder and Kulwant breached "their duty of loyalty under RCW 25.05.165."[40] This argument fails, however, for the same reasons we have already discussed. Kulwant was not a partner. Nor have the Samras presented any specific and detailed evidence that Bhupinder breached his fiduciary duties to the partnership.

### IV. Unjust Enrichment

The Samras contend that the trial court erred in dismissing their unjust enrichment claims. Unjust enrichment allows a party to recover the value of a benefit it has conferred on another party, absent any contractual relationship, if

---

[37] See Appellants' Br. at 20.

[38] Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996); RAP 10.3(a)(6).

[39] Appellants' Br. at 21.

[40] Id.

fairness and justice require it.[41]  To prevail on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.[42]

Here, the Samras claim that they lost their cash investment into the Roseberg Project and have a foreclosure on their credit record, while Kulwant and the other partners "remain working to develop and sell" the Roseberg Project property.[43]  However, they failed to present any evidence that Pritpal, Gurbaksh, or Bhupinder received any benefit from the foreclosure and trustee's sale of the Roseberg Project property.  There is no evidence in the record showing that Priptal, Gurbaksh, or Bhupinder had a legal or equitable ownership in the property post-foreclosure.

Further, the record indicates that Kulwant bought the Roseberg Project property at the trustee's sale.  He did not purchase it from the Samras.  The Samras have not presented any evidence to prove that they conferred any benefit upon Kulwant.  Because the Samras have not shown a question of fact about whether a benefit was conferred upon the respondents, summary judgment of their unjust enrichment claims is appropriate.

---

[41] Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

[42] Id.

[43] Appellants' Br. at 22.

## *V. Wrongful Lis Pendens*

The trial court ruled that the Samras violated RCW 4.28.328(2) for wrongful filing of the lis pendens. The Samras now argue that they had a "substantial justification" for filing the lis pendens.[44] But they failed to raise this argument to the trial court.

Generally, we do not review an issue, theory, argument, or claim of error not presented at the trial court level.[45] Failure to raise the issue before the trial court "precludes raising the error on appeal."[46] "'While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised.'"[47]

We decline to consider the Samras' argument being raised for the first time on appeal attempting to justify their lis pendens filing.

---

[44] See Appellants' Br. at 23-27. Filing a lis pendens is substantially justified when the claimant has a "reasonable, good faith basis in fact or law for believing they have an interest in the property." S. Kitsap Family Worship Ctr. v. Weir, 135 Wn. App. 900, 912, 146 P.3d 935 (2006).

[45] Mukilteo Ret. Apartments, L.L.C. v. Mukilteo Inv'rs L.P., 176 Wn. App. 244, 258, 310 P.3d 814 (2013); RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issue called to the attention of the trial court.").

[46] Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 81, 322 P.3d 6 (2014).

[47] Id. (quoting Karlberg v. Otten, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012)).

## VI. Attorney Fees and Costs to Kulwant

Lastly, the Samras challenge the trial court's award of attorney fees and costs to Kulwant for filing the lis pendens without substantial justification. "We review the legal basis for an award of attorney fees de novo and the reasonableness of the amount of an award for abuse of discretion."[48]

A lis pendens may be filed "any time after an action affecting title to real property has been commenced."[49] However, a party who files a wrongful lis pendens may be liable in damages for doing so. RCW 4.28.328, which governs liability for lis pendens filings, provides in pertinent part:

> Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action.[50]

Here, the trial court determined that the Samras did not establish "substantial justification" for filing the lis pendens.[51] The Samras argue that "[e]ven if [they] lacked substantial justification to file the lis pendens, a court should exercise its discretion and not award fees."[52] But the record shows that the trial court did recognize and exercise its discretion. The trial court awarded $8,400 in

---

[48] Hulbert v. Port of Everett, 159 Wn. App. 389, 407, 245 P.3d 779 (2011).

[49] RCW 4.28.320.

[50] RCW 4.28.328(3).

[51] CP at 2514.

[52] Appellants' Br. at 28.

attorney fees and $487.23 in costs related only to work Kulwant's counsel performed on the lis pendens issue. This was not an abuse of discretion. The trial court's fee award was proper.

### *VII. Attorney Fees on Appeal*

Kulwant requests attorney fees on appeal pursuant to RAP 18.1(a). Because the trial court properly granted attorney fees and costs related to work done on the lis pendens claim, we award Kulwant the reasonable attorney fees he incurred in arguing this issue only on appeal, subject to his compliance with RAP 18.1(d).[53]

Pritpal, Gurbaksh, and Bhupinder ask that we impose sanctions against the Samras under RAP 18.9(a), which permits an appellate court to impose sanctions on a party or counsel "who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." They allege this appeal is frivolous because the Samras' "failure to comply with RAP 10.3 soured a losing appeal into a meritless appeal."[54]

---

[53] RCW 4.28.328(3); Richau v. Rayner, 98 Wn. App. 190, 199, 988 P.2d 1052 (1999).

[54] PGB's Resp't's Br. at 17. Pritpal, Gurbaksh, and Bhupinder also filed a motion on the merits to affirm pursuant to RAP 18.14, arguing that this appeal is frivolous and for an award of attorney fees on appeal. Their motion was placed in the case file without action because, pursuant to the General Orders of Division I, we no longer use the procedure previously authorized under RAP 18.14.

An appeal is not frivolous if it involves "'debatable issues upon which reasonable minds might differ.'"[55]  The appeal was not frivolous.

We affirm the trial court's orders.

_____

WE CONCUR:

_____    _____

---

[55] <u>Olsen Media v. Energy Sciences, Inc.</u>, 32 Wn. App. 579, 588, 648 P.2d 493 (1982) (quoting <u>Streater v. White</u>, 26 Wn. App. 430, 435, 613 P.2d 187 (1980)).