[No. 64102-6-I.  Division One.  January 18, 2011.]

WILLIAM G. HULBERT, JR., ET AL., *Appellants*, v. THE PORT OF EVERETT, *Respondent*.

---

390

*Thomas H. Wolfendale* and *Kymberly K. Evanson* (of *K&L Gates LLP*), for appellants.

*Mark S. Nadler* and *Liberty Waters* (of *The Nadler Law Group PLLC*), for respondent.

¶1 SPEARMAN, J. — This appeal arises from the 1991 sale of 30 acres of land by appellants (the Hulberts) to the Port of Everett (Port) through an agreement of purchase and sale (Agreement). An exhibit to the Agreement provided for the Hulberts to indemnify the Port, for three years after the date of sale, for any liability incurred by the Port arising from the discovery and cleanup of hazardous substances existing on the property before the date of sale. Approximately 15 years later, in 2006, the Port notified the Hulberts that they were potentially liable parties under the Model Toxics Control Act (MTCA), chapter 70.105D RCW. The Hulberts brought a claim in superior court seeking a declaration that the Agreement barred any MTCA contribution action by the Port. The trial court ruled that the Agreement did not bar a contribution action under the MTCA and entered summary judgment in favor of the Port. The Hulberts appeal the trial court's ruling on summary judgment, its certification of the ruling under CR 54(b), and its award of attorney fees to the Port. We hold that the Agreement did not manifest a mutual intent to allocate MTCA liability after the termination of the 3-year period of indemnity, and that the evidence did not create a genuine issue of material fact. Accordingly, we affirm the trial court's ruling on summary judgment. We also affirm the trial court's certification of its summary judgment ruling under CR 54(b) and its award of attorney fees to the Port. We award attorney fees on appeal to the Port based on the Agreement and remand for a determination of the amount.

## FACTS

¶2 The underlying lawsuit arises from the sale of 30 acres of land in Everett (Property) by appellants to the Port

in 1991. The William Hulbert Mill Company Inc. began milling operations on the Property in the early 1920s, shutting down operations around 1960. The company leased portions of the Property to various industrial operations until 1986, when it dissolved and transferred the Property to the William Hulbert Mill Company LP. From 1986 to 1990, the Property was leased to various commercial and industrial tenants. In 1990, a portion of the Property was transferred to William G. Hulbert, Tanauan Hulbert Martin, and David Francis Hulbert. The three owned the Property as tenants in common along with the William G. Hulbert Jr. and Clare Mumford Hulbert Revocable Living Trust, while William Hulbert Mill Company LP owned the remaining portion (these owners are the appellants in this case).

¶3  In 1991, a representative for the Hulberts approached the Port about selling the Property. The parties were aware that the Property likely had environmental issues, so the Port requested the Hulberts to indemnify it against any environmental liability arising from the site. The Hulberts agreed to indemnify the Port against liability involving hazardous substances for three years after the date of sale. The parties had a phase I environmental site assessment performed. The resulting report, referred to by the parties as the "Kleinfelder Report," identified certain areas of environmental concern and recommended that the Port perform additional investigations. The parties agreed that the Hulberts would fund all environmental investigation and remediation that the Kleinfelder Report recommended.

¶4  On March 8, 1991, for a purchase price of $9.5 million, the Hulberts conveyed the Property to the Port through the Agreement. The Agreement included an addendum entitled "Additional Environmental Testing and Clean Up Activities" and a "Certificate and Indemnity Regarding Hazardous Substances." The Certificate recited the Hulberts' obligations during the three-year indemnity period. It also set forth the Hulberts' representations that they had "no notice from any governmental agency or other party and except as

set forth in the Kleinfelder Report . . . no knowledge . . ." of any hazardous substance on the Property, nor of any discharges of hazardous substances on the Property, nor of any violation of any laws relating to hazardous substances. The Agreement had an integration clause.

¶5 An escrow account was established for the Hulberts' obligations with funds from the purchase price. The Hulberts performed the additional cleanup activities required under the Agreement and, in 1992, the escrow funds were released to them. The Port did not ask the Hulberts to perform any additional activities under the Agreement or request indemnity for other costs during the three-year period.

¶6 In 2006, the Washington State Department of Ecology required the Port to perform additional remedial investigation and cleanup work on the Property. The Port, complying with the notice requirements of the MTCA, sent letters to all potentially liable parties. In May 2006, the Hulberts were notified that they were potentially liable for costs incurred in the investigation and remediation of the land under the MTCA.

¶7 On September 8, 2006, in response to the letters, the Hulberts filed a complaint for injunction, declaratory, and other relief in Snohomish County Superior Court, seeking a declaration that the Agreement barred any claims by the Port for MTCA contribution and seeking to enjoin the Port's investigation and remediation on the land pending the court's determination of the Hulberts' liability under the Agreement or the MTCA. The Hulberts claimed that the Port's right to seek contribution from them under the MTCA ended when the Hulberts' obligation to indemnify the Port for environmental liabilities terminated on March 8, 1994.

¶8 The trial court orally denied the Hulberts' request for injunctive relief, and the parties began conducting discovery. The Port answered and counterclaimed for MTCA contribution. The parties then cross-moved for partial summary judgment on the issue of whether the Agreement

barred the Port's MTCA contribution claim. The trial court granted the Port's motion on December 10, 2007, concluding that the Agreement did not bar MTCA liability.[1] On May 12, 2009, the Port moved for bifurcation of the "contract claims" from the environmental allocation matters under CR 42 and for an award of attorney fees under the Agreement. The Port argued that all causes of action arising from the Agreement were decided and requested entry of final judgment. As an alternative to bifurcation, the Port sought certification of the court's December 10 order under CR 54(b). The Hulberts opposed the motion. The trial court denied the Port's motion for certification because the Port failed to provide the requisite findings for entry of a CR 54(b) order. The court ordered the Port to prepare proposed findings and resubmit its request for attorney fees, after eliminating certain fees that the trial court found were unreasonable. The Hulberts opposed the Port's proposed findings and its second request for fees. On July 27, 2009, the court granted the Port's motion to certify its December 10 order. The court also entered final judgment against the Hulberts in the amount of $111,101.87, reflecting its award of attorney fees to the Port. The Hulberts appeal.

## DISCUSSION

¶9 The Hulberts appeal the trial court's ruling on summary judgment that the Agreement did not bar MTCA liability, its certification of its summary judgment ruling under CR 54(b), and its award of attorney fees to the Port. We affirm the rulings of the trial court and award attorney fees on appeal to the Port.

---

[1] The substantive portion of the trial court's order reads, "This result reached upon review of the Agreement of Purchase & Sale, and especially Article 4 and the attached Certificate and indemnity, and particularly paragraphs 4, 5 & 6, the rules of contract interpretation, [*Hearst Communications, Inc. v. Seattle Times Co.*], 154 Wn.2d 493, 503 (2005), and *Southland Corp. v. Ashland Oil* [*, Inc.*], 696 F. Supp. 994 ([D.N.J.] 1988)."

*Summary Judgment*

¶10 The court reviews summary judgment decisions de novo, engaging in the same inquiry as the trial court. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); *Versuslaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005). A genuine issue of material fact exists where reasonable minds could differ regarding the facts controlling the outcome of the litigation. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

¶11 In essence, the Hulberts argue that the Certificate provided a ceiling on the Hulberts' liability, while the Port argues that it provided a floor. The Hulberts advance four main points in support of their argument that the Agreement precludes MTCA liability. First, focusing on the express terms of the Agreement, they argue that article 4 conditioned the Port's acceptance of the Property on the limitations in the Certificate and that the inclusion of 15 environmental statutes evidences the parties' intent to allocate all environmental liability. Second, pointing to the context in which the Agreement was made, they argue that the subject matter, objective circumstances at execution, and subsequent acts of the parties demonstrate the parties' intent to preclude future MTCA liability. Third, the Hulberts argue that the trial court's reliance on *Southland Corp. v. Ashland Oil, Inc.*, 696 F. Supp. 994 (D.N.J. 1988), is misplaced. Finally, they argue that there is no evidence that the Port intended to "reserve" an MTCA contribution right. In the alternative, they urge this court to reverse the trial court's summary judgment ruling on the basis that there were genuine issues of material fact.

¶12 The Port argues that the plain language of the Agreement shows that the Port did not release, waive, or

otherwise agree to the termination of its statutory contribution rights. It also contends that extrinsic evidence of the Hulberts' unexpressed, subjective intent is irrelevant, inadmissible, and insufficient to create a genuine issue of material fact. The Port maintains:

> The Hulberts' indemnity obligation was tantamount to a three year insurance policy for the Port during which the Hulberts were required to pay the *full* cost of any and all environmental liabilities including expenses and attorney fees that the Port might incur by having purchased the site, regardless of who was actually responsible for the presence of the Hazardous Substances on the property and regardless of any contribution or equitable liability allocation for which these other parties would have been responsible. In contrast, the Port's MTCA contribution rights only allow the Port to require the Hulberts to pay their equitable allocation of the Port's remedial action costs for the site based upon the Hulberts' own responsibility for the presence of Hazardous Substances on the property.

¶13 At the outset, we note that parties *can* contractually allocate their environmental liabilities under the MTCA. *Car Wash Enters., Inc. v. Kampanos*, 74 Wn. App. 537, 544-45, 874 P.2d 868 (1994) (contractual allocation of MTCA liability by private parties is "an established and effective business practice"); *see also Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir. 1986). Therefore, the resolution of this issue depends on whether the contract between the Hulberts and the Port allocates MTCA liability.

¶14 Washington follows the objective manifestation theory of contract interpretation, under which courts attempt to ascertain the intent of the parties "by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Courts "impute an intention corresponding to the reasonable meaning of the words used," and words are given their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates otherwise. *Id.* Under the context rule, extrin-

sic evidence relating to the context in which a contract is made may be examined to determine the meaning of specific words and terms. *See id.* at 502-03. Extrinsic evidence includes the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties, and the reasonableness of the respective interpretations urged by the parties. *Id.* at 502. Extrinsic evidence may *not*, however, be used to " 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.' " *Id.* at 503 (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)). Moreover, extrinsic evidence of a party's subjective, unilateral intent as to the contract's meaning is not admissible. *Id.* (citing *Go2Net, Inc. v. CI Host, Inc.*, 115 Wn. App. 73, 60 P.3d 1245 (2003)). Nor is it admissible under the parol evidence rule to add to the terms of a fully integrated written contract. *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 775, 202 P.3d 960 (2009) (citing *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 32, 959 P.2d 1104 (1998)).

¶15 Applying these rules, we hold that the Agreement does not objectively manifest a mutual intent that the Hulberts, after the termination of the three-year period, would be released from all environmental liability, including under the MTCA or any other statute. Instead, the Certificate simply guarantees the Port that the Hulberts would be responsible for any costs or expenses related to the presence of hazardous substances on the Property for three years following the sale. Upon the expiration of the three-year period, the protections provided by the Certificate ceased to exist, and the Port could no longer seek indemnification *under the Certificate or its terms*. But in the absence of any language indicating that the Port agreed to release or waive any *other* rights it might have in the future, the Agreement did not preclude a statutory MTCA contribution action after the three years expired.

¶16 We reject the Hulberts' argument that the express terms of the Agreement bar the Port's MTCA claim. The

Hulberts contend that article 4 expressly conditions the Port's acceptance of the Property upon the three-year limitation on liability. Specifically, they argue that article 4.02 of the Agreement constitutes the Port's acceptance of the parties' plan to address potential environmental liabilities based on the explicit terms and conditions of the Certificate. Article 4.02 provides that the Port has

> inspected the physical condition of the Property and accepts such condition subject to the terms and conditions of the Agreement and the Certificate and Indemnity attached hereto as Exhibit D relating to hazardous materials investigation and cleanup, if required.

The Certificate, which is incorporated into the Agreement, refers to 15 federal and state statutes, including the MTCA, when defining the term "hazardous substances." It also contains the Hulberts' agreement to indemnify the Port for any liability arising from the presence of hazardous substances on the Property and expressly provides that "[t]he representations, warranties and covenants of [the Hulberts] set forth in this Certificate . . . shall continue in effect and shall remain true and correct for a period of three (3) years after the date of this certificate . . . ."

¶17 But conspicuously absent from the Agreement and the Certificate is an explicit expression of an intent to allocate MTCA liability. Indeed, the language contained in the Certificate, in which the Hulberts disclaim any notice or knowledge of any environmental law violations or of the presence of hazardous substances on the property besides those contained in the Kleinfelder Report is, in effect, an "as is" clause. And where the evidence does not demonstrate that the parties so intended, an "as is" clause does not contractually allocate MTCA liability. *See Car Wash Enters.*, 74 Wn. App. at 546-47; *Southland*, 696 F. Supp. at 1001 ("as is" provision is merely a warranty disclaimer). Although the Hulberts argue otherwise, they cite no authority in support of a contrary interpretation.

¶18 We also reject the Hulberts' argument that the subject matter and objective of the Agreement demonstrate

the parties' intent to preclude a future contribution action by the Port. The Hulberts point out that article 4, exhibit C, and exhibit D pertained to the resolution of environmental liabilities and 15 environmental statutes were named to define "hazardous substances." They also point out that the parties had received the results of the Kleinfelder Report, which identified a number of areas of environmental concern that were addressed by the Agreement. They contend that the Port's attempt to negotiate an extension of the indemnity period to 25 years is further evidence of the Port's being aware that the Hulberts' environmental liability was limited in time. But while we may consider such extrinsic evidence to determine the meaning of specific words and terms, we will not consider such evidence to " 'show an intention independent of the instrument' " or to " 'vary, contradict or modify the written word.' " *Hearst Commc'ns*, 154 Wn.2d at 503 (quoting *Hollis*, 137 Wn.2d at 695-96). Here, the plain terms of the Agreement do not, in any manner, provide for the responsibility for any environmental liability after the three-year indemnification period, nor does the Agreement contain any provisions regarding waiver of, or release from, liability.

¶19 Moreover, the Hulberts' contention that the Port's interpretation renders ineffective limitations imposed by the Certificate and article 4 is unfounded. The fallacy of their argument becomes apparent when the Certificate is viewed as a guarantee of the Port's rights: The three-year limitation on the guarantee is effective to the extent the Port seeks to enforce its rights under the Agreement, but it is of no effect where, as here, the Port acts under the MTCA.

¶20 None of the cases cited by the Hulberts stand for the proposition that the termination of a period of indemnity by one party shifts all liability—particularly liability not covered by the indemnity (here, under the MTCA)—to the other party. Instead, the cases cited by the Hulberts in which a contractual allocation of liability was upheld involved *express* provisions of release, waiver, or promise of

indemnification.[2] The Hulberts also rely on *Keywell Corp. v. Weinstein*, 33 F.3d 159 (2d Cir. 1994) and *Armotek Industries v. Freedman*, 790 F. Supp. 383 (D. Conn. 1992). These cases are likewise distinguishable. Specifically, in both cases the sellers made express representations to the buyers that the property was in compliance with environmental laws, and the time-limited indemnity related to those representations. Here, the Hulberts made no such affirmative representations that the Property was in compliance with environmental laws, and the time-limited indemnity provision therefore did not refer or relate to any such representations.

¶21 In sum, the Certificate expressed a guarantee by the Hulberts to indemnify the Port against liability arising from hazardous substances for a period of three years after the date of sale. The Port's contribution action arises not under the Agreement but under a statute. Unless the Agreement between the parties allocated responsibility under the MTCA, or contained an implied or express waiver or release, the Port's rights under the MTCA are unaffected

---

[2] *See Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1994) (contract transferring ownership of property under which current owners agreed to indemnify against any claim concerning pollution or nuisance was enforceable against current owners notwithstanding fact that the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601-9675, was enacted after agreement); *Mardan*, 804 F.2d 1454, 1456 (settlement agreement and release encompassing " 'all actions, causes of action, suits, . . . based upon, arising out of or in any way relating to the Purchase Agreement' " barred purchaser's action under CERCLA where parties knew of hazardous substances on land and specifically addressed possibility that corrective action would be required, and where CERCLA had been in effect for nearly a year at the time of settlement agreement and release (alterations in original)); *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467 (D.N.J. 1992) (indemnification clause in corporate bylaws precluded CERCLA liability action of company against estate of former president and director); *Purolator Prods. Corp. v. Allied-Signal, Inc.*, 772 F. Supp. 124, 127-28 (W.D.N.Y. 1991) (parties' prior agreements with indemnification provisions for " 'all liabilities and obligations . . . relating to or arising out of the Assets' " and for " 'any and all liabilities arising out of or connected with the assets and businesses' " encompassed CERCLA liability insofar as liability related to or arose out of assets transferred, even where environmental liability was not expressly mentioned in either agreement); *FMC Corp. v. N. Pump Co.*, 668 F. Supp. 1285, 1292 (D. Minn. 1987) (release from " 'all claims, demands and causes of action' " encompassed later CERCLA claims (emphasis omitted)).

by the expiration of the three-year period. The Agreement did neither.

¶22 Furthermore, we hold that the trial court did not err in concluding that there was no genuine issue of material fact and that summary judgment should be entered as a matter of law. The evidence put forth by the Hulberts, viewed most favorably to them, demonstrates only that they *subjectively* and personally understood the Agreement to preclude liability after three years. The declarations do not offer evidence of the parties' *mutual* intent. For instance, none of them state that discussions were had with port representatives in which the parties agreed that the Port would be precluded from pursuing any environmental contribution claims after the three-year period expired. Moreover, this evidence, showing only the Hulberts' subjective intent, would likely not be admissible at trial. *Hearst Commc'ns*, 154 Wn.2d at 503.

### *CR 54(b) Certification of Summary Judgment Order*

¶23 A trial court's decision to enter judgment under CR 54(b) is reviewed for abuse of discretion. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wn. App. 665, 694, 82 P.3d 1199 (2004).

¶24 The Hulberts argue that a final judgment was premature because, at the conclusion of the litigation, the parties will have claims for fees under the MTCA that may offset each other. Moreover, the proceedings in the trial court are ongoing, and certification of the order forced them to appeal this issue while simultaneously litigating the underlying action in trial court. *Id.* The Hulberts contend that the Port sought final judgment only so that it could immediately recover attorney fees, and citing *Loeffelholz*, argue that certification for this purpose is inappropriate.

¶25 The Port argues that the trial court did not err in certifying under CR 54(b) because the court made the

requisite findings.[3] The Port disputes the Hulberts' contention that it sought certification of the summary judgment order so that it could immediately recover attorney fees. Instead, it contends, it did so to ensure that any appeal of the decision that the Agreement is not a bar to MTCA contribution would be taken before the MTCA allocation process.

¶26 The following four elements must be met for a trial court to enter a CR 54(b) final judgment: " '(1) more than one claim for relief or more than one party against whom relief is sought; (2) an express determination that there is no just reason for delay; (3) written findings

---

[3] The trial court made the following findings in support of certification under CR 54(b):

1. That the plaintiffs' and third party defendant's ("Hulberts'") claims for injunctive and declaratory relief pursuant to the parties' 1991 Agreement for Purchase and Sale ("Contract"), which were dismissed with prejudice by the December 10, 2007 Order granting summary judgment, are separate and extricable from all remaining claims in the case, which consist only of claims for contribution under the Model Toxics Control Act, RCW 70.105D ("MTCA");

2. That the issues involved in the Contract claims were related to the construction of the Contract terms, whereas the issues involved in the MTCA claims relate to the existence, timing, and extent of the alleged releases of hazardous substances on the Site and the particulars of the cleanup of same;

3. That the parties involved in the Contract claims include only the Hulberts and the Port, whereas the parties involved in the MTCA claims also involve other third parties (including parties for which the Court has granted leave to the Port to join in this litigation) with no interest or involvement in the Contract claims;

4. That no issues relating to the Contract claims, and particularly no issues which would be reviewed on an appeal, if any, of the December 10, 2007 Order, remain before the trial court for determination;

5. That there is no possibility that any developments in the litigation of the remaining MTCA claims would moot the finality of the Contract claims because the Contract claims are so legally and factually distinct from the MTCA claims;

6. That there is no possibility that the alleged basis for appellate review of the December 10, 2007 Order may be mooted by the litigation of the remaining MTCA claims because the Contract claims are so legally and factually distinct from the MTCA claims;

7. That an immediate appeal of the December 10, 2007 Order will not delay trial of the remaining MTCA claims;

8. That the lengthy period of time necessary to complete the pre-trial preparations and to try the remaining MTCA claims supports certification of the December 10, 2007 Order as a final judgment.

supporting the determination that there is no just reason for delay; and (4) an express direction for entry of the judgment.' " *Fluor Enters., Inc. v. Walter Constr., Ltd.*, 141 Wn. App. 761, 766-67, 172 P.3d 368 (2007) (quoting *Nelbro Packing Co. v. Baypack Fisheries, LLC*, 101 Wn. App. 517, 523, 6 P.3d 22 (2000)). The trial court should consider the following factors in determining whether there is no just reason for delay:

> "(1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal."

*Lindsay Credit Corp. v. Skarperud*, 33 Wn. App. 766, 772, 657 P.2d 804 (1983) (alteration in original) (quoting *Schiffman v. Hanson Excavating Co.*, 82 Wn.2d 681, 687, 513 P.2d 29 (1973)).

¶27 We agree with the Port and affirm the trial court. The Hulberts do not appeal the trial court's findings of fact, and those findings of fact support the entry of judgment under CR 54(b). The Port argues, persuasively, that any appeal by the Hulberts of this issue should have been taken immediately so that the parties did not engage in a lengthy MTCA allocation process that could have been overturned if the Hulberts had appealed their contract claim after the MTCA process and prevailed.

¶28 The Hulberts contend that a final judgment was premature because the parties will have claims for fees under the MTCA that may offset each other, as both the Hulberts and the Port have prevailed on motions seeking to declare the other party liable. It is unclear what motions the Hulberts are referring to, and they do not explain why the parties' dueling claims for fees would be affected by the

entry of final judgment on the separate contract dispute. Furthermore, these are considerations that the trial court would have weighed. The Hulberts also contend that "the proceedings in the trial court in this case are ongoing, and certification of the order has forced the Hulberts to appeal this issue while simultaneously litigating the underlying action in the trial court." But one of the very purposes in entering final judgment on the contract issue was so that the Hulberts would appeal that issue before the ongoing MTCA dispute was finalized. Finally, while the Hulberts claim that the Port improperly sought final judgment only so that it could immediately recover attorney fees, they point to no evidence to substantiate this claim.

### Trial Court's Award of Attorney Fees

¶29 We review the legal basis for an award of attorney fees de novo and the reasonableness of the amount of an award for abuse of discretion. *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993); *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Council House, Inc. v. Hawk*, 136 Wn. App. 153, 159, 147 P.3d 1305 (2006).

¶30 Section 5.08 of the Agreement states, "In the event of the bringing of any action or suit by either party against the other arising out of this Agreement, the party in whose favor final judgment shall be entered shall be entitled to recover from the other party all costs and expenses of suit, including reasonable attorneys' fees." The Port initially submitted a request, but the trial court ordered the Port to resubmit the request after eliminating certain fees. The Port submitted a revised request of $111,101.87, which the trial court granted in full on the ground that it prevailed on the contract claim. The trial court made a number of findings in support of the award. It found that the hourly rates charged by the Port's counsel

were reasonable, the amount of time spent defending against the Hulberts' contract claims was reasonable, the Port's request for fees was "based upon sufficiently detailed, contemporaneously kept time records," and the request did not include time spent wastefully or in duplication of effort.

¶31 The Hulberts argue that the award of attorney fees to the Port was unreasonable, requesting that a total of $28,222.50 be deducted from the award. Specifically, they contend that the award included fees incurred responding to all of the Hulberts' discovery requests when only some of the requests related to the contract claim,[4] fees for work unrelated to the contract claim, and fees for work on purely administrative tasks. The Hulberts also argue that the trial court erred because it did not conduct its own segregation of recoverable fees from nonrecoverable fees or require the Port to do so.

¶32 The Port argues that the court's award of attorney fees was reasonable because its request did not include fees for any work other than defending against the Hulberts' contract claims. It disputes the Hulberts' contention that it did not segregate fees.

¶33 As an initial matter, we point out that the Hulberts' argument that the Port's time entries are not properly segregated appears to be a rehashing of its more specific arguments that the fees for discovery for work unrelated to the contract claim and for administrative work were not recoverable because they were not related to the contract claim. They contend that this purported failure requires the award of attorney fees to be vacated. We therefore consider only the Hulberts' more specific arguments about the disputed fees.

¶34 We affirm the award of attorney fees. First, while the Hulberts contend that the Port should not be awarded

---

[4] The Hulberts contend that their first discovery requests consisted of 21 interrogatories and 9 requests for production, and that only 2 of each type related to the indemnity issue, while the remainder related to the MTCA liability issues that remain undecided.

fees for work spent responding to all of the Hulberts' discovery requests when only some of them related to the contract dispute, the Hulberts themselves made the requests before the Port had asserted its MTCA counterclaim. In other words, the only claim in the suit at the time the Hulberts made their discovery requests was their own. Moreover, the Hulberts do not dispute the Port's contention that the Port's attorneys segregated fees spent responding to the Hulberts' MTCA-related discovery, "erring on the side of excluding more than was necessary" and excluding approximately 115 of 340 hours. Finally, the Hulberts fail to point to any portions in the record that would allow this court to examine the actual discovery requests at issue.

¶35 Second, the Hulberts contend that the trial court failed in not excluding time for work not arising under the Agreement. They point to specific time entries as examples of work that should not have been included. However, they fail to explain how the trial court abused its discretion in finding that these tasks and others were related to the contract action between the parties.

¶36 Third, we reject the Hulberts' argument that the award should be reduced because it included fees for purely administrative tasks, because the provision stated that the party in whose favor final judgment was entered was entitled to recover "*all* costs and expenses of suit." (Emphasis added.) The Hulberts do not contend that these tasks were not costs involved in the suit, only that they were administrative in nature.

¶37 In sum, while the Hulberts dispute certain specific time entries, "[t]he determination of the fee award should not become an unduly burdensome proceeding for the court or the parties." *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 848, 917 P.2d 1086 (1995). "An 'explicit hour-by-hour analysis of each lawyer's time sheets' is unnecessary as long as the award is made with a consideration of the relevant factors and reasons sufficient for review are given for the amount awarded." *Id.* We affirm the trial court's award of fees.

*Attorney Fees on Appeal*

¶38 The Hulberts argue that under RAP 18.1 and RCW 4.84.330, they are entitled to attorney fees incurred on appeal. They point to the Agreement, which provides for "all costs and expenses of suit, including reasonable attorneys' fees," to the prevailing party. The Port is the prevailing party on appeal, and upon its compliance with RAP 18.1, we award attorney fees accordingly.

¶39 Affirmed and remanded for a determination of attorney fees on appeal.

ELLINGTON and LAU, JJ., concur.