# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

PHILIP A. NELSON,           )      No. 72436-3-I

       Appellant,         )

       v.                   )

ROBERT V. TRENT and JANE DOE )
TRENT, husband and wife, individually )
and their marital community composed )
thereof; and SDC HOMES, LLC, a )
Washington limited liability company, )     UNPUBLISHED OPINION

       Respondents.      )      FILED: December 8, 2014

VERELLEN, J. — Philip Nelson appeals from the trial court's partial summary judgment order, contending that his former employer, SDC Homes (SDC), owes him stipends for the bulk sale of 256 vacant lots.[1] But, based upon the parties' objective manifestation of intent in the employment agreement's compensation provision (§ 12.1), Nelson receives a stipend only if SDC sells a home on a lot acquired through Nelson. The context rule does not apply to rewrite § 12.1's unambiguous language of "per home sold" to "per lot sold." Nelson's other arguments are unpersuasive. Accordingly, we affirm.

___

[1] The trial court certified the order it entered on partial summary judgment as final under CR 54(b). Other claims and counterclaims remain to be litigated.

## FACTS

SDC hired Nelson as a "Land Acquisition Manager" in February 2010. SDC's president, Robert Trent, and Nelson negotiated Nelson's employment agreement with SDC. The agreement addresses compensation in § 12.1:

> SDC HOMES LLC shall pay Employee for services rendered, pursuant to this Agreement, $5,000 monthly plus a stipend of $1,000 *per home sold* if the land was purchased through Phil Nelson as the Land Acquisition Manager.[2]

In March 2011, Nelson was terminated for cause. Later that month, SDC sold its assets to MDC Holdings (MDC), including 256 vacant lots purchased by SDC during Nelson's employment.[3] Nelson sued SDC and Trent for unpaid stipends. The trial court granted partial summary judgment for SDC and Trent, concluding that a home sale on a lot acquired through Nelson was a condition precedent to a stipend payment, and that § 12.1 did not obligate SDC or Trent to pay a stipend where SDC elected to sell the vacant lots as part of a bulk sale.

Nelson appeals.

## ANALYSIS

The parties dispute the meaning of "per home sold" in § 12.1. Nelson contends that the condition to "earning" a stipend was the acquisition of land, not a home sale, and that SDC was obligated to pay Nelson the stipends when SDC sold the vacant lots in bulk to MDC. He contends that the sale of a lot, with or without a home, dictated only the timing of when the stipend would be paid. He further contends that § 12.1 is

---

[2] Clerk's Papers (CP) at 18 (emphasis added).

[3] Nelson concedes that when SDC sold the 256 lots, the lots were vacant. See Reply Br. of Appellant at 1.

ambiguous and subject to more than one reasonable interpretation. We disagree.

We review a partial summary judgment order de novo and "view the facts and the reasonable inferences from those facts in the light most favorable" to the nonmoving party.[4] Summary judgment is appropriate where there are no genuine issues of material fact.[5] "A material fact is one that affects the outcome of the litigation."[6] Summary judgment is proper on a contract claim "if reasonable persons could reach but one conclusion" and "if the written contract, viewed in the light of the parties' objective manifestations, has only one reasonable meaning."[7]

The touchstone of contract interpretation is the parties' intent.[8] We construe contracts "to reflect the intent of the parties."[9] We follow the "objective manifestation theory" of contract interpretation, focusing on the "reasonable meaning of the contract language to determine the parties' intent."[10] To ascertain the parties' intent, we focus

---

[4] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003).

[5] Lowman v. Wilbur, 178 Wn.2d 165, 168, 309 P.3d 387 (2013) (quoting id. at 794-95).

[6] Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

[7] Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 492, 494, 116 P.3d 409 (2005).

[8] Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 86, 100, 285 P.3d 70 (2012); 25 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 5:7, at 152 (2d ed. 2007).

[9] Corbray v. Stevenson, 98 Wn.2d 410, 415, 656 P.2d 473 (1982).

[10] Viking Bank v. Firgrove Commons 3, LLC, ___ Wn. App. ___, 334 P.3d 116, 120 (2014).

on the objective manifestations of the agreement.[11] "We impute an intention corresponding to the reasonable meaning of the words used."[12]

We also follow the context rule that "extrinsic evidence relating to the context in which a contract is made may be examined to determine the meaning of specific words and terms" used in the contract.[13] Extrinsic evidence includes both the contract's subject matter and objective, the circumstances surrounding contract formation, both the parties' conduct and subsequent acts, and the reasonableness of the parties' respective interpretations.[14] But extrinsic evidence may not be used to "'show an intention independent of the [contract]' or to 'vary, contradict[,] or modify the written word.'"[15] Extrinsic evidence of a party's subjective, unilateral, or undisclosed intent regarding the meaning of a contract's terms is inadmissible.[16] We "should ultimately give effect to . . . the intent of the parties at the time of execution."[17]

Section 12.1 states:

SDC HOMES LLC shall pay Employee for services rendered, pursuant to this Agreement, $5,000 monthly plus a stipend of $1,000 *per home sold* if the land was purchased through Phil Nelson as the Land Acquisition Manager.[18]

---

[11] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[12] Id.

[13] William G. Hulbert, Jr. & Clare Mumford Hulbert Revocable Living Trust v. Port of Everett, 159 Wn. App. 389, 399-400, 245 P.3d 779 (2011).

[14] Id. at 399.

[15] Hearst Commc'ns, 154 Wn.2d at 503 (quoting Hollis v. Garwall, 137 Wn.2d 683, 693, 974 P.2d 836 (1999)).

[16] Hulbert, 159 Wn. App. at 400.

[17] 25 DeWolf & Allen, § 5:7, at 154.

[18] CP at 18 (emphasis added).

This provision requires us to analyze the meaning of "per home sold" based upon the parties' objective manifestation of intent.

If contractual language is "clear and unambiguous," we must enforce the written contract.[19] We must give "per" its "ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates otherwise."[20] "Per" is commonly defined as "for each" or "for every."[21] Here, § 12.1 is plain, clear, and unambiguous. Nelson receives a $1,000 stipend "for every" or "for each" home sold on a lot acquired through Nelson. He admitted in his deposition that the contract states that "there is no stipend on any lot until there is a home sold."[22] Therefore, the parties' objective manifestation of intent is that Nelson receives a stipend if SDC sells a home on a lot acquired through Nelson.

Nelson contends that because he had no involvement in home sales and was hired principally to acquire vacant lots suitable for residential home construction, he "earned" the stipends through SDC's acquisition of the lots, and that the sale of a lot, with or without a home, dictated only the timing of a stipend payment. We disagree.

Citing the context rule, Nelson seeks to use extrinsic evidence to rewrite § 12.1, contrary to the parties' objective manifestation of intent. If the parties intended to pay Nelson a stipend for the acquisition of a lot and not a home sale, they could have manifested this intent by using "per lot" as provided in Nelson's successor's agreement

---

[19] Lehrer v. State, Dep't of Soc. & Health Servs., 101 Wn. App. 509, 515, 5 P.3d 722 (2000).

[20] Hulbert, 159 Wn. App. at 399.

[21] BLACK'S LAW DICTIONARY 1316 (10th ed. 2014); WEBSTER'S THIRD NEW INT'L DICTIONARY 1674 (2002) (defining "per" as "for each").

[22] CP at 371.

5

rather than "per home sold."[23]  Therefore, SDC's obligation to pay Nelson a stipend arises only if SDC sells a home on a lot acquired through Nelson.

Because SDC initially experienced cash-flow problems, Nelson contends that a stipend would be paid when the land generated revenue via a sale, whether or not a home had been constructed on that land.  Concerns over cash flow are just as consistent with limiting stipends to occasions when revenue has been generated by the construction and sale of a home.  Nelson admitted that he would "get paid . . . when we [SDC] sell houses because that's the best way for cash flow.  When we sell a house, we make a profit."[24]  Structuring a compensation provision to pay a stipend for each home sale is a solution to cash-flow problems.  And most importantly, Nelson's interpretation of § 12.1 contradicts the unambiguous and plain meaning of "per home sold."  The agreement does not mention "per lot," "per bulk sale," or "per bulk sale of vacant lots"; the agreement unambiguously uses the phrase "per home sold" as a condition precedent to a stipend.[25]  We will not rewrite § 12.1 to read "per lot sold."

Nelson contends that "per home sold" is not a condition precedent to SDC's obligation to pay a stipend.  "A condition precedent is an event occurring subsequent to the making of a valid contract which must exist or occur before there is a right to

---

[23] Nelson's successor's agreement provides for a "[b]onus of $160 *per lot* for each lot acquired by Company to be paid in the next pay cycle after lot closes."  CP at 577 (emphasis added).

[24] CP at 369.

[25] When asked by opposing counsel whether there was "a contingency in this agreement that . . . in the event the company acquired land but chose not to build on it" or "if the company was sold or there was a change in control" that Nelson would receive some payment, Nelson answered, "No." Id. at 373-74.

immediate performance."[26] Generally, "*any words* which express the idea that performance of a promise is dependent upon some other event will establish a condition."[27] The essence of a condition is that uncertainty surrounds whether the event will occur.[28]

Here, SDC had no legal or contractual obligation to construct homes on land, and there was uncertainty whether homes would be built and sold on each lot. No talismanic language is necessary to create a condition precedent in a contract.[29] The condition to payment of a stipend is a home sale, not the acquisition of lots suitable for residential construction. We conclude that a stipend payment is conditioned upon a home sale.

Nelson contends that SDC must pay him the stipends because SDC elected to sell the vacant lots in bulk and thus caused the nonoccurrence of a condition. Nelson argues that because he already "earned" the stipends through SDC's acquisition of the vacant lots, SDC cannot avoid its obligation to pay him the stipends by selling the lots in bulk. But Nelson does not allege or establish that SDC acted in bad faith or in violation of its duty of good faith and fair dealing. "An implied duty of good faith and fair dealing exists in every contract."[30] This duty requires that the parties perform in good faith the obligations, e.g., conditions precedent, imposed by their agreement so that "'each may

---

[26] Walter Implement, Inc. v. Focht, 107 Wn.2d 553, 556-57, 730 P.2d 1340 (1987).

[27] 25 DEWOLF & ALLEN, § 8:1, at 204 (emphasis added).

[28] Id. at 205.

[29] See id. at 204.

[30] United Fin. Cas. Co. v. Coleman, 173 Wn. App. 463, 476, 295 P.3d 763 (2012).

obtain the full benefit of performance.'"[31] "Each party . . . cannot be excused from performance of the contract by his own misconduct."[32]

Nelson does not dispute that SDC could validly sell the vacant lots without homes. The record is devoid of any evidence that SDC sold the lots in bulk to MDC to avoid paying Nelson stipends.[33] Because good faith is the standard that governs review of SDC's failure to construct homes on lots acquired by SDC[34] and because the record lacks any evidence that SDC acted in bad faith in selling its assets in bulk to MDC, we reject Nelson's contentions.

Both parties' analogies to real estate broker commission principles are misplaced. Nelson functioned as a land acquisition manager, not as a real estate agent or broker. Nelson contends that SDC's decision not to construct homes was the equivalent of a seller electing not to sell property after a real estate agent procured a ready, willing, and able buyer to purchase property. But he cites no authority applying real estate broker "procuring-cause" principles to interpret an employment agreement's

---

[31] Id. (quoting Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)).

[32] CHG Int'l, Inc. v. Robin Lee, Inc., 35 Wn. App. 512, 515, 667 P.2d 1127 (1983).

[33] See CP at 52 (declaration of Trent) ("The sale [SDC-MDC transaction] was an arm's length transaction arranged through an investment banking broker. . . . The decision to sell was completely unrelated to the employment situation with Mr. Nelson, and my decision to terminate Mr. Nelson was in no way predicated on a potential sale."). No evidence in the record suggests that Trent had an ownership or other interest in MDC when SDC sold its assets to MDC.

[34] See, e.g., Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 81, 96 P.3d 454 (2004).

compensation provision.[35]  Real estate broker commission principles are unhelpful, and we decline that analogy.

Lastly, Nelson contends that § 12.1 is illusory because it is within SDC's discretion to sell lots or build homes.  This argument is unpersuasive.  Nelson's premise is that SDC must pay him stipends whether or not a home was constructed and sold.  We reject that premise.  It is never illusory for contracting parties to condition payment upon the occurrence of a particular event, e.g., on a home sale.[36]  The parties here clearly conditioned a stipend payment upon a home sale on a lot acquired through Nelson.  Section 12.1 is not illusory simply because it is within SDC's discretion to sell lots or build homes.

We affirm the trial court's partial summary judgment order.

WE CONCUR:

---

[35] Although SDC also relies on real estate broker commission cases from foreign jurisdictions, SDC correctly states the applicable legal standard—good faith and fair dealing—to analyze whether SDC's decision to sell the vacant lots in bulk rather than to construct homes should obligate it to pay Nelson the stipends.

[36] Grimes v. New Century Mortg. Grp., 340 F.3d 1007, 1010 (9th Cir. 2003) ("It is not, however, the requirement that certain conditions be satisfied that may make the contract illusory."); see Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 721, 225 P.3d 266 (2009) (holding that buyer's failure to fulfill condition precedent to furnish down payment excused vendor from completing contract); Tacoma Northpark, 123 Wn. App. at 76 (holding that sale of real property was subject to condition precedent that vendor obtain final plat approval which resulted in buyer's option to rescind sale).