# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| LLRIG TWO, LLC, a Washington limited liability company; LOST LAKE RESORT, LLC, a Washington limited liability company; BRENT McCAUSLAND; and DAVID BLOCK,<br><br>Plaintiffs,<br><br>v.<br><br>RV RESORT MANAGEMENT, LLC, a Washington limited liability company; LOST LAKE RESORT INVESTMENT GROUP, LLC, a Washington limited liability company; LEE WILSON and LORI WILSON, husband and wife; JEFFREY GRAHAM, a single man; and JOHN S. MILLS,<br><br>Defendants. | No.  49069-2-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — This appeal arose over a dispute to determine the ownership of two promissory notes and a deed of trust (Sterling Savings Bank Notes and Deed of Trust) which encumbered an 85-acre parcel being developed into residential lots known as Lost Lake Resort, LLC.  Lee and Lori Wilson[1] appeal the trial court's partial summary judgment order ruling that Lost Lake Resort Investment Group Two, LLC (LL2) purchased and owned the Sterling Savings Bank Notes and Deed of Trust, they also appeal the court's CR 54(b) order.

---

[1] The original Notice of Appeal was filed only by the Wilsons.  Although RV Resort joined in filling an Amended Notice of Appeal, it does not challenge the superior court's ruling related to RV Resort, nor did RV Resort file any briefs.  Thus, we refer to appellants as the Wilsons.

Because the Wilsons raise new issues on appeal which were not argued below, we hold that they failed to preserve these issues for appeal. Because the Wilsons failed to adequately cite to the record to support their factual statements, failed to adequately brief the issues, and failed to provide sufficient supporting authority as required under RAP 2.5(a), RAP 10.3(a)(5), and RAP 10.3(a)(6), we do not consider their remaning arguments. Thus, we affirm the trial court's partial summary judgment order and CR 54(b) order.

FACTS

I. BACKGROUND

Jeff Graham owned two parcels, the 85-acre parcel being developed into residential lots known as Lost Lake Resort, LLC and an additional 56-acre parcel with four undeveloped lots known as Lost Lake Development, LLC. As of 2010, the Wilsons held a deed of trust on the 56-acre parcel securing a note for approximately $319,000. In 2010, Graham asked a group of investors, Brent McCausland, David Block, Tom Deustch, and Gary Monette, to loan him money to develop the 85-acre parcel. The investors agreed to loan Graham the money and formed a limited liability company called Lost Lake Resort Investment Group, LLC (LL1). As security for the loan, Graham gave a deed of trust[2] to LL1 against the 56-acre parcel. Later in 2010, the Wilsons entered into an agreement with LL1 to assign their note and deed of trust encumbering the 56-acre parcel to LL1 in return for a 49 percent interest in LL1.

Graham then filed for bankruptcy in 2010, as did Lost Lake Development, LLC. Lost Lake Resort, LLC was listed as an asset in Graham's bankruptcy filing. The 85-acre parcel held by

---

[2] This deed of trust is distinguished from the Sterling Savings Bank Deed of Trust which encumbered the 85-acre Lost Lake Resort, LLC property.

Graham was subject to security devices including the Sterling Savings Bank Notes and Deed of Trust as Sterling Savings Bank had taken over for the original lender.

Graham instructed J. Mills, an attorney who represented the Wilsons, McCausland, and Block in the bankruptcy proceedings, to make an offer to Sterling Bank on behalf of LL1 to purchase the Sterling Savings Bank Notes and Deed of Trust. Graham was not an investor or member of LL1. Nor did Mills represent LL1 or consult with LL1 after Graham's request. At the time, LL1 had no money. LL1's sole asset was the note secured by the deed of trust on Lost Lake Development, LLC's 56-acre parcel.

As instructed by Graham, Mills made the offer on behalf of LL1 to Sterling Savings Bank for LL1 to purchase the Sterling Savings Bank Notes and Deed of Trust on Lost Lake Resort, LLC and Sterling Savings Bank accepted the offer. Mills then contacted two of the LL1 investors, McCausland and Block, and asked whether they wanted to purchase the Sterling Savings Bank Notes and Deed of Trust. McCausland and Block told Mills that they wanted to buy the Sterling Savings Bank Notes and Deed of Trust individually or in a newly created LLC, which they would exclusively own. Sterling Savings Bank, however, would only sell the Notes and Deed of Trust to LL1. Mills advised McCausland and Block that they could purchase the Sterling Savings Bank Notes and Deed of Trust using their own money but in the name of LL1, and then after the purchase by LL1, they could transfer the Sterling Savings Bank Notes and Deed of Trust from LL1 to the newly created LLC. McCausland and Block spoke to the other LL1 investors, Monette and Deutsch, and obtained their approval to transfer the Sterling Savings Bank Notes and Deed of Trust to the newly created LLC. The Wilsons were not involved in the purchase decision or the approval

of the transfer. Mills also apprised Graham that McCausland and Block had purchased the Sterling Savings Bank Notes and Deed of Trust.[3]

Mills then created a new LLC, LL2, solely owned by McCausland and Block. McCausland and Block then purchased Lost Lake Resort, LLC and Lost Lake Development, LLC from the bankruptcy trustee. Mills then prepared assignment documents for McCausland, as the manager of LL1 and LL2, to assign the Sterling Savings Bank Notes and Deed of Trust from LL1 to LL2. Mills then prepared a Deed in Lieu of Foreclosure from Lost Lake Resort, LLC to LL2, so that McCausland and Block would receive title to the 85-acre parcel. Mills then withdrew from representing any of the parties.

The Wilsons subsequently agreed to buy the other investors' remaining 51 percent interest in LL1, including that of McCausland and Block. The Wilsons entered into a purchase agreement and agreed not to sell or transfer any interest in LL1 until all of their payments for the sale were made. Under this agreement, the Wilsons owned 100 percent of the interest in LL1. Shortly thereafter, the Wilsons claimed to have transferred 100 percent of their interest in LL1 to a new LLC, RV Resort, which was owned by the Wilsons and Graham's mother. Mills then tendered to either the Wilsons or RV Resort the original Sterling Savings Bank Notes and Deed of Trust, which Mills had never delivered to LL2 despite the assignment of the Sterling Savings Bank Notes and Deed of Trust to LL2.

---

[3] Through Mills, Graham allegedly tried to become re-involved in the development of the 85-acre parcel's development, but McCausland and Block rejected his efforts. Graham then allegedly tried to become re-involved with the Wilsons.

The Wilsons started foreclosure on the Sterling Savings Bank Deed of Trust and then later started foreclosure on Lost Lake Development, LLC through the deed of trust originally held by LL1.

In 2013, McCausland, Block, Deutsch, and Monette and the Wilsons claimed an ownership interest of 51 percent in LL1. McCausland, Block, Deutsch, and Monette filed a lawsuit against the Wilsons and RV Resort seeking a return of the 51 percent interest based on the Wilsons' breach of the purchase agreement. In a separate lawsuit, LL2, Lost Lake Resort, LLC, McCausland and Block sued RV Resort, the Wilsons, Graham, and LL1 alleging that the Sterling Savings Bank Notes and Deed of Trust were owned by LL2, not the Wilsons or RV Resort, among other claims. In the separate lawsuit, LL2, Lost Lake Resort, LLC, McCausland and Block also sued Mills for malpractice. The parties settled some of the claims in both lawsuits, reserving other claims for trial, and agreed that "to simplify resolution of the remaining issues between them related to the ownership of two Sterling Savings Bank [N]otes secured by a [D]eed of [T]rust . . . [the case] will be determined based upon the facts and events that had occurred as of April 1, 2013." Clerk's Papers (CP) at 433. The parties also agreed that the trial court would determine the validity of the Wilsons' attempted transfer of the 49 percent interest in LL1 to RV Resort.[4]

## II. SUMMARY JUDGMENT

LL2, Lost Lake Resort, LLC, McCausland, and Block filed a motion for partial summary judgment asking the trial court to determine whether LL2 owned the Sterling Savings Bank Notes and Deed of Trust. In their motion, they alleged that (1) neither LL1 nor RV Resort owned any

---

[4] The two lawsuits were consolidated.

5

interest in the Sterling Savings Bank Notes and Deed of Trust and (2) the Wilsons, not RV Resort, owned a 49 percent interest in LL1. They argued three theories at summary judgment: (1) that the transfer of the Sterling Savings Bank Notes and Deed of Trust from LL1 to LL2 was effective; (2) that the transfer complied with LL1's operating agreement because a majority of the investors had approved the transfer; and (3) that they were entitled to ownership of the Sterling Savings Bank Notes and Deed of Trust under the doctrines of resulting trust or constructive trust. They argued that because it was undisputed that McCausland and Block purchased the Sterling Savings Bank Notes and Deed of Trust with their individual funds and that all parties involved intended that the Sterling Savings Bank Notes and Deed of Trust belonged to LL2, that LL2 held the Sterling Savings Bank Notes and Deed of Trust. Finally, they argued that as a matter of law that the Wilsons' attempted transfer of their LL1 interest to RV Resort should be declared void.

RV Resort, the Wilsons, and LL1 filed a response to the motion, arguing that the transfer of the Sterling Savings Bank Notes and Deed of Trust to LL2 violated paragraph 7.6 of the operating agreement because the operating agreement required a vote of a majority of disinterested investors. Paragraph 7.6 of LL1's operating agreement provides: "No Member shall have any right to demand or receive any distribution from the Company in any form other than cash, upon dissolution or otherwise." CP at 423. They argued that McCausland did not have the authority to transfer the Sterling Savings Bank Notes and Deed of Trust without consent of the majority of disinterested investors. They also argued that neither a constructive or resulting trust was established, because even though Block and McCausland paid Sterling Savings Bank for the Notes and Deed of Trust it held, LL1 gave consideration for the purchase.

6

After a hearing, the trial court determined that LL2 owned the Sterling Savings Bank Notes and Deed of Trust and granted partial summary judgment. The trial court also ordered that the Wilsons owned 49 percent of LL1, and that Wilson's attempted transfer of LL1's assets to RV Resort was "void and of no effect," and granted the partial summary judgment motion. CP at 513.

### III.  CR 54(B) ORDER

LL2, Lost Lake Resort, LLC, McCausland, and Block also filed a motion requesting that the trial court certify the partial summary judgment order as a final order for appeal under CR 54(b). They argued that the remaining claims[5] for trial were separate claims for damages and that none of those claims involved a determination of the ownership of the Sterling Savings Bank Notes and Deed of Trust.

RV Resort, the Wilsons, LL1, and Mills filed a response and argued that the motion should be denied because there was no need for multiple appeals; the trial court's rulings on the other claims, including the claim for breach of fiduciary duty, might change the outcome of the case; and the parties should focus on trial preparation instead.

The trial court entered findings of fact, conclusions of law, and an order granting the motion to certify under CR 54(b). The Wilsons appeal the partial summary judgment order and the CR 54(b) order.[6]

---

[5] After summary judgment, the remaining claims for trial included a breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and tortious interference with a business expectancy.

[6] The Wilsons do not appeal the portion of the order that the attempted transfer of the Wilsons' interest in LL1 was void and that RV Resort had no beneficial interest in the Sterling Savings Bank Notes and Deed of Trust. Prior to the summary judgment ruling, the Wilsons, as owners of 49 percent of LL1, claimed a beneficial interest in the Sterling Savings Bank Notes and Deed of Trust.

ANALYSIS

I. STANDARDS OF REVIEW

We review an order granting partial summary judgment de novo, engaging in the same inquiry as the trial court. *Dunnington v. Virginia Mason Med. Ctr.*, 187 Wn.2d 629, 637, 389 P.3d 498 (2017). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Dunnington*, 187 Wn.2d at 638. A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Dunnington*, 187 Wn.2d at 638.

We review CR 54(b) orders for an abuse of discretion. *William G. Hulbert, Jr. & Clare Mumford Hulbert Revocable Living Trust v. Port of Everett*, 159 Wn. App. 389, 404, 245 P.3d 779 (2011).

## II. PRESERVATION OF ISSUES FOR APPEAL

LL2 argues that the Wilsons failed to preserve any of their issues for appeal because the issues they raise on appeal were not raised below and the trial court did not have an opportunity to rule on these issues or cure any error, and thus, we should not consider these issues under RAP 2.5(a). We agree that RV Resort and the Wilsons failed to properly preserve their issues for appeal under RAP 2.5(a).

A party generally waives the right to appeal an error absent an objection before the trial court. RAP 2.5(a). The purpose of the rule is to allow the trial court to correct any error called to its attention, thus avoiding needless appeals and retrials. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

The Wilsons assign error to the trial court's (1) conclusion of law that LL2 owned the Sterling Savings Bank Notes and Deed of Trust; (2) decision not to address the issue of equitable ownership of the Sterling Savings Bank Notes; (3) interpretation of the operating agreement under which the Sterling Savings Bank Notes were transferred to LL2; and (4) CR 54(b) order. The Wilsons assert six issues on appeal in support of their assignments of error, summarized as follows:

(1) Can a manager of a LLC transfer the LLC's asset to himself, in violation of the LLC's operating agreement and breaching his fiduciary duty to the LLC?[7]

(2) When a member transfers assets from a LLC to another LLC wholly owned by the member, does the transfer constitute a distribution to himself, and thus, pierce the corporate veil, making the member personally liable?

(3) Does the good faith requirement in contractual dealing apply even though a clause in the operating agreement may suspend it (regarding requiring a vote with notice)?

(4) Can the manager of a LLC benefit from his position by receiving assets from the LLC without approval from the majority of disinterested members?

(5) Does a party sufficiently plead for equitable title by alleging the invalidity of a transfer, arguing it continues to hold ownership of the property, and asserting conversion and unjust enrichment as additional causes of action?

(6) Should the property at issue be entrusted to a party while trial is pending when mismanagement and bad-faith management are alleged against that party?

The Wilsons argue that each of these issues affect the ownership of the Sterling Savings Bank Notes and Deed of Trust, and that, if proven, would establish that RV Resort, not LL2, owned the Sterling Savings Bank Notes and Deed of Trust. Thus, they argue that the trial court erred in determining ownership of the Sterling Savings Bank Notes and Deed of Trust as a matter of law on summary judgment.

At the summary judgment hearing, the Wilsons made two arguments that they also raise on appeal. First, they argued that the transfer of the Sterling Savings Bank Notes and Deed of Trust violated LL1's operating agreement because it constituted a distribution in violation of

---

[7] The trial court in its partial summary judgment order did not make a determination on whether the transfer constituted a breach of fiduciary duty. LL2, Lost Lake Resort, LLC, McCausland, and Block did not file a motion for summary judgment on that issue, and thus, the issue of damages for the alleged breach of fiduciary duty remains for trial.

paragraph 7.6. Second, they argued that McCausland did not have the authority to transfer the Sterling Savings Bank Notes and the Deed of Trust without consent of the majority of disinterested investors. However, as discussed below, the Wilsons did not argue in the summary judgment hearing or motion below, nor do they adequately explain on appeal, how either of these issues affect ownership of the Sterling Savings Bank Notes and Deed of Trust.

But only by interpreting the Wilsons' arguments below very broadly could we conclude that their counterclaims encompass the six new issues they now assert on appeal. We decline to read their counterclaims this broadly. Because the Wilsons raise new issues on appeal not argued below, and the trial court did not have an opportunity to rule on these issues or cure any alleged error, we hold that the Wilsons failed to properly preserve these issues for appeal under RAP 2.5(a), and we do not consider these issues.[8]

### III. NONCOMPLIANCE WITH RAPS

LL2 also argues that the Wilsons failed to provide citations to authority or provide adequate authority to support their arguments, and thus, we should not consider their arguments under RAP 10.3(a)(5) and RAP 10.3(a)(6).[9] We agree.

---

[8] The Wilsons appealed the partial summary judgment order, but under the settlement agreement between the parties, RV Resort had no interest in LL1 on April 1, 2013, and thus, RV Resort had no interest in the Sterling Savings Bank Notes and Deed of Trust. And the Wilsons did not appeal the portion of trial court's order that concluded that the Wilsons' attempted transfer of the LL1's assets to RV Resort was "void and of no effect." CP at 513; *see* Br. of Appellants. Accordingly, we do not consider this issue on appeal. RAP 2.5(a); *O'Hara*, 167 Wn.2d at 98.

[9] LL2 also argues that the trial court correctly granted its motion for partial summary judgment because it owned the Sterling Savings Bank Notes and Deed of Trust under the doctrines of constructive trust and resulting trust. The Wilsons do not address this issue.

RAP 10.3(a)(5) requires a party to make "[a] fair statement of the facts and procedure relevant to the issues presented" and include "[r]eference to the record . . . for each factual statement." The purpose of this rule is to enable the court and opposing counsel to efficiently and expeditiously review the accuracy of the factual statements made in the briefs. *Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305, 991 P.2d 638 (1999).

RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.3d 549 (1992); *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield*, 178 Wn. App. at 876. Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)(6). *Cowiche Canyon*, 118 Wn.2d at 809.

The Wilsons provide only minimal citations to the record to support their statement of the facts or their arguments. They also provide minimal authority to support their arguments. Further, when addressing the issue of the equitable ownership of the Sterling Savings Bank Notes and Deed of Trust, the Wilsons cite one case, *Dunlap v. Rauch*, 24 Wash. 620, 64 P. 807 (1901), to support their arguments. But *Dunlap* is not relevant to the issues on appeal.

In *Dunlap*, the plaintiff sought to recover the remainder of a judgment after she filed suit to recover an unpaid subscription to the capital stock of an insolvent corporation. *Dunlap*, 24 Wash. at 621. The main issue of the case was that there existed a problem with the complaint.

*Dunlap*, 24 Wash. at 623. The court stated that there was no error by not formally substituting the receiver of the judgment in the case. *Dunlap*, 24 Wash. at 623-25. The *Dunlap* court held that the capital stock of a corporation must be paid for in money, or in money's worth, and that the estimate of value placed upon property by the stockholders or trustees of a corporation which is transferred to the corporation in payment of capital stock is not conclusive upon the courts. 24 Wash. at 626. *Dunlap* is inapposite.

Because the Wilsons fail to adequately cite to the record to support their factual statements and arguments, and fail to adequately cite to authority or provide substantive argument to support their assignments of error, we do not consider these issues.

### IV.  CR 54(B) CERTIFICATION OF SUMMARY JUDGMENT ORDER

The Wilsons also assign error to the trial court's CR 54(b) order. They argue that there was a just reason for delay claiming that the trial court's order did not resolve the issue of ownership of the Sterling Savings Bank Notes and Deed of Trust. LL2 did not address this argument.

The Wilsons again do not cite to any authority to support their arguments in their brief. Instead, in their brief they ask rhetorical questions, but do not provide substantive argument as to why the trial court's CR 54(b) order certifying the partial summary judgment order for appeal was error and an abuse of discretion. Accordingly, we do not consider this issue. RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809; *Brownfield*, 178 Wn. App. at 876.

No. 49069-2-II

Thus, we affirm the trial court's partial summary judgment order and CR 54(b) order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

MELNICK, J.